COMMONWEALTH *vs.* ANTHONY MAGGIO.

Middlesex. November 2, 1992. - January 19, 1993.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Practice, Criminal*, Probation. *Due Process of Law*, Probation revocation.

Proceedings in a District Court terminating a criminal defendant's proba-
tionary status did not comply with the standards of due process applica-
ble to a final probation revocation hearing imposed by *Morrissey* v.
*Brewer*, 408 U.S. 471 (1972), and *Gagnon* v. *Scarpelli*, 411 U.S. 778
(1973), where it could not be concluded, at least to a reasonable degree
of certainty, that the defendant received adequate disclosure of the evi-
dence against him prior to the proceedings; that the defendant had an
adequate opportunity to present any meaningful case on his own behalf;
that good cause existed for the judge's abrogating the defendant's
rights of confrontation and cross-examination; and that the evidence
before the judge was such that he was capable of making an indepen-
dent finding that the defendant had violated a condition or conditions of
his probation. [196-199]

COMPLAINTS received and sworn to in the Cambridge Divi-
sion of the District Court Department on August 9, 1990,
September 17, 1990, and November 27, 1990, respectively.

A proceeding for revocation of probation was heard by *Ar-
thur Sherman*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Yvonne P. Toyloy*, Committee for Public Counsel Services,
for the defendant.

*David R. Marks*, Assistant District Attorney, for the
Commonwealth.

GREANEY, J. We transferred this case from the Appeals
Court on our own motion to determine whether proceedings
in a District Court which terminated the defendant's proba-
tionary status complied with the standards of due process ap-

plicable to probation revocation hearings. We conclude that they did not. Accordingly, we vacate the guilty findings that were entered and the sentences imposed on the defendant.

The following are the pertinent facts. On November 27, 1990, in the Cambridge Division of the District Court Department, the defendant, in accordance with the procedure established in *Commonwealth* v. *Duquette*, 386 Mass. 834, 845-847 (1982), agreed in writing to the disposition of three charges[1] (larceny of a motor vehicle, breaking and entering, and possession of burglarious tools) by admitting to sufficient facts to warrant a finding of guilty on each charge. The cases were continued to November 27, 1992, without a finding, and the defendant was placed under the supervision of a probation officer on terms which, among others, required that he "obey local, state and federal laws and court orders." The terms, including the last one, were essentially the terms imposed on all defendants who are placed on probation. The agreements signed by the defendant also provided that, if he failed to meet any conditions of the continuance, guilty findings could be entered on each charge, and he would be sentenced to serve a total of ninety days in a house of correction.

On April 18, 1991, the defendant was arraigned in the Cambridge District Court on charges of armed assault with intent to murder and assault and battery by means of a dangerous weapon. On that same day, the defendant was served with a "Request for Summons Form," which advised him that he was in noncompliance with the terms of his probation because of a "New Offense Attempted Murder." Thereafter, the district attorney entered a nolle prosequi in the District Court on the assault complaints and obtained grand jury indictments in the Superior Court for Middlesex County for the same offenses. On May 14, 1991, the defendant was arraigned on the indictments in the Superior Court.

On May 22, 1991, a hearing was held in the Cambridge District Court in reference to terminating the continuance

---

[1]On a fourth charge of larceny, the judge entered a guilty finding and placed the case on file.

granted the defendant, and seeking to have guilty findings entered on the charges that had been continued and the prescribed sentences imposed. At the hearing, a probation officer testified that the defendant had been "arraigned in Middlesex Superior Court on May 14th . . . for armed assault and assault and battery with a dangerous weapon . . . [and] I have . . . the bill confirming that." The probation officer testified that she did not know what evidence had been presented to the grand jury to support the indictments, that she had not seen the grand jury minutes, and that she was not otherwise aware of what had transpired before the grand jury. The probation officer furnished the judge with a copy of an indictment which she described as "what the [assistant district attorney] handling the case gave me this morning."[2] No other witness testified at the hearing, and no other evidence was presented.

On the basis of the probation officer's testimony and the copy of one indictment, and over the express objections of defense counsel, the judge entered guilty findings on the three charges which had been continued without finding and ordered the house of correction sentences into effect. The defendant appealed, and a single justice of the Appeals Court granted a stay of execution of the sentences pending resolution of the appeal.

The proceedings in the District Court were handled as a probation revocation hearing, and the Commonwealth and the defendant have presented the appeal on the basis that the standards applicable to probation revocation govern the case. We see no reason not to deal with the case under these standards. The dispositive question is whether the defendant was accorded the due process protections necessary to a final probation revocation proceeding.

In *Commonwealth* v. *Durling*, 407 Mass. 108, 113 (1990), habeas corpus denied, 789 F. Supp. 457 (D. Mass. 1992), we

---

[2]This appears to have been a copy of the indictment charging the defendant with assault by means of a dangerous weapon (knife) with intent to murder one Florian Thompson on April 15, 1991, in Cambridge.

outlined the Federal due process principles established by the United States Supreme Court in *Morrissey* v. *Brewer*, 408 U.S. 471 (1972), and *Gagnon* v. *Scarpelli*, 411 U.S. 778 (1973), for a final probation revocation hearing as follows: "*Morrissey* and *Gagnon* establish that the minimum requirements of due process include ' "(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of the evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole." *Morrissey* v. *Brewer*, *supra* at 489.' *Gagnon* v. *Scarpelli*, *supra* at 786."

We went on to discuss in *Durling* the type of evidence that would be sufficient to satisfy these requirements, and, ultimately, to warrant a finding that a defendant had violated his probation. We indicated that a defendant's probation could be revoked based solely on hearsay evidence of his violation of probation, as long as the hearsay evidence bore substantial indicia of reliability. *Id.* at 121-122. Further, we stated that the evidence presented at the final revocation hearing must be such as to allow the judge to "make a principled decision," *id.* at 118 n.6, and "to determine, as a factual matter, that the defendant indeed violated the law." *Id.* at 112. In the *Durling* case, for example, the evidence consisted of two police reports by officers from different police departments which related primary facts, not conclusions or opinions, in considerable detail. *Id.* at 120-121. We found the reports substantially reliable and sufficiently detailed both to dispense with the defendant's right to confront and to cross-examine the police officers and to warrant a finding that the defendant had violated his probation. *Id.* at 121-122.

As noted, the proceedings here involved a final probation revocation hearing to which the *Morrissey-Gagnon* due process requirements apply. We think the proceedings were deficient in at least four respects under those requirements as explained in the *Durling* case.

First, a probationer facing a final probation revocation hearing must be made aware of the evidence against him. Unlike defendants who are present at probable cause hearings or trials and actually hear the evidence against them, this defendant was not present with the grand jury when they heard the evidence that caused them to return the assault indictments. There is no showing that the defendant was otherwise informed of any of the facts underlying those indictments. The defendant's arraignments in the District Court and the Superior Court may have furnished him with some minimal information on the charges, but the record does not indicate exactly what was disclosed at the arraignments. It cannot be concluded with any certainty that the defendant received adequate disclosure of the evidence against him prior to the May 22 probation revocation hearing as required by requirement (b) of the *Morrissey-Gagnon* standards.

Second, requirement (c) of the standards grants the probationer the right to present witnesses and evidence in his own defense. If the probationer is unaware of the evidence against him, then realistically he cannot defend himself. Here, the record contains no indication that the defendant was aware of the specifics of his allegedly wrongful conduct. Thus, it cannot be concluded that the defendant had an adequate opportunity to present any meaningful case on his own behalf.

Third, the *Morrissey-Gagnon* standards require that defendants be given the right to confront and to cross-examine witnesses, unless the judge finds "good cause" to dispense with these requirements. We held in *Durling*, *supra*, that the existence of reliable hearsay evidence provides good cause to deny a defendant his right to confront and to cross-examine witnesses during a final probation revocation proceeding. In this case, the evidence presented to the judge, consisting only of the bare fact of an indictment or indictments, did not con-

tain the indicia of reliability on which we relied in *Durling*. We know nothing about what was presented to the grand jury and have no basis for determining that the proof was trustworthy enough to excuse the probation department from presenting a live witness who could have been cross-examined. The judge identified no other good cause for abrogating the defendant's rights of confrontation and cross-examination, nor can we discern one.

Fourth, the evidence before the judge must be such that he is capable of making an independent finding, at least to a reasonable degree of certainty, that the defendant had violated a condition or conditions of his probation. *Durling, supra* at 112 (judge must determine, as a factual matter, that the probationer has violated the law). See *United States v. Czajak*, 909 F.2d 20, 22 (1st Cir. 1990) (judge must be "reasonably satisfied" that a probation violation has occurred); 3 LaFave & Israel, Criminal Procedure § 25.4, at 160 (1984) (*Morrissey-Gagnon* standards require that the hearing officer make an independent decision on the issues before him). In this case, the judge received no evidence, beyond the indictment, bearing on the defendant's allegedly criminal conduct, so an independent finding based on discernable proof could not be made.

We have recognized an exception to this last rule. A criminal conviction, after trial or a guilty plea, establishes a defendant's guilt beyond a reasonable doubt based on evidence heard by the defendant which he has either contested or admitted. Because the probationer knows the evidence against him, and had the opportunity to contest it, this adequately protects the probationer's right to due process, and may serve as the basis for a summary revocation of probation even though the judge lacks the factual information to make an independent determination that a probation violation has occurred. *Rubera* v. *Commonwealth*, 371 Mass. 177, 181-182 (1976). See 3 LaFave & Israel, *supra* at 162-163. In contrast, a grand jury indictment depends only on the existence of evidence sufficient to warrant a finding of "probable cause to arrest [the defendant]," *Commonwealth* v. *O'Dell*, 392

Mass. 445, 451 (1984), a standard described as "considerably less exacting than a requirement of sufficient evidence to warrant a guilty finding." *Id.* An allegation in an indictment, unsupported by any account of the facts underlying it,[3] cannot play the same role in a final probation revocation proceeding as does a criminal conviction.

We conclude that the revocation of the defendant's probation did not comply with the due process requirements imposed by *Morrissey* v. *Brewer, supra,* and *Gagnon* v. *Scarpelli, supra.* The guilty findings and sentences entered pursuant to the agreements made by the defendant for the claimed violation of probation are vacated. The agreements, including the defendant's admissions to sufficient facts and the proposed sentences, remain in force. The case is remanded to the Cambridge Division of the District Court Department for such further proceedings as may be appropriate consistent with the terms of the agreements.

*So ordered.*

---

[3]It would not have been necessary to produce the victim of the alleged assaults to prove the case for revocation against the defendant. See *Commonwealth* v. *Durling*, 407 Mass. 108, 117 n.4 (1990), habeas corpus denied, 789 F. Supp. 457 (D. Mass. 1992). Reliable, factually detailed hearsay would have been sufficient. This could be furnished, for example, by the district attorney who presented the evidence to the grand jury, a copy of the grand jury minutes, detailed police reports, or the testimony of any witnesses to the assaults.