COMMONWEALTH *vs.* EMMANUEL E., a juvenile.

No. 99-P-2127.

Suffolk. May 8, 2001. - August 31, 2001.

Present: BROWN, JACOBS, & McHUGH, JJ.

*Practice, Criminal,* Probation. *Juvenile Court,* Probation. *Due Process of Law,* Probation revocation. *Evidence,* Hearsay.

On a juvenile probationer's claim that his due process rights were violated because the Commonwealth failed, during his revocation hearing, to provide any witnesses with firsthand knowledge that he committed a crime, this court vacated orders revoking his probation and committing him to the custody of the Department of Youth Services, where the only evidence of the alleged criminal conduct of the juvenile, certain hearsay testimony of a police officer, was insufficient to prove by a preponderance of the evidence that the juvenile had violated a condition of his probation by violating a criminal law. [453-455]

COMPLAINT received and sworn to in the Boston Division of the Juvenile Court Department on July 14, 1999.

A proceeding for revocation of probation was held before *John J. Craven, J.*

*J. Daniel Silverman* for the juvenile.

JACOBS, J. After being charged with breaking and entering in the daytime, the juvenile's probation[1] was revoked by a judge of the Boston Juvenile Court, and he was ordered committed to the Department of Youth Services. He appeals, claiming that his due process rights were violated because the Commonwealth

---

[1] In July of 1999, the juvenile had pleaded guilty to a charge of delinquency for an assault by means of a dangerous weapon, and received a suspended sentence on a commitment to the Department of Youth Services, with probation until April 24, 2003.

failed, during his revocation hearing, to provide any witnesses with firsthand knowledge that he committed a crime.[2]

The only witness at the October, 1999, hearing was a Boston police officer who testified, largely from "notes"[3] and over repeated hearsay objections, as follows. On July 30, 1999, he responded to a 1:30 P.M. radio call of a breaking and entering in progress at 73 Clarkson Street, Boston, a multi-dwelling building. He was told by Maria C., a resident of that building, that "she saw two suspects enter the premises through the front door." While they were in the hallway area, she asked them what they were doing and they stated that they were looking for her son. About ten minutes later, she observed the same persons leaving the premises through the side basement door. She identified the juvenile and another male from among a group of ten to twelve people who had gathered outside as the persons who had "broken" into her apartment. Her son stated that a certain folding knife was missing from his room. Based on his conversations with them, the officer concluded that Maria C. and her son did not want the juvenile in their apartment. The juvenile was then taken into police custody. Later, while the officer was at the police station, he received a telephone call from a woman who identified herself as a neighbor of Maria C. and stated that she had observed two black males, one named Emmanuel (the juvenile), leave 73 Clarkson Street through the basement door. The neighbor's statement, standing alone, adds

---

[2]An assistant district attorney represented the Commonwealth at the hearing. No appellate brief was submitted by the Commonwealth, nor was it represented at oral argument in this case. Such lack of representation by counsel is not uncommon to probation revocation proceedings and it often disserves the interests of the Commonwealth.

[3]Early into his testimony, the police officer acknowledged that he was testifying from his "notes." Much of his testimony tracks the wording of a police report signed by the officer and dated the same day as his investigation. A probation officer referred to the police report at the commencement of the hearing and a copy of the report appears in the record appendix although there is no indication in the record that it was admitted in evidence before, during, or following the hearing or that the judge read it or relied upon it in reaching his decision. Accordingly, we do not rely upon any conclusory or hearsay information in the report in arriving at our decision. Compare *Commonwealth v. Morse*, 50 Mass. App. Ct. 582, 584-585 n.3 (2000) (this court allowed the Commonwealth's motion to expand the record to include an affidavit which had been filed in the trial court).

nothing save corroboration of Maria C.'s allegation that the juvenile was in the building and left through the basement door. It does not contribute to establishing that the juvenile committed a crime.

The juvenile's lawyer argued to the judge that the Commonwealth had not demonstrated good cause for preventing the juvenile from confronting the witnesses referred to by the officer. The judge, without responding to that argument or making any statement of findings or reasons, summarily found the defendant to be in violation of his probation.

Although revocation of probation may be based upon a violation of criminal law, "there is no prerequisite that the probationer be convicted. . . ." *Rubera* v. *Commonwealth*, 371 Mass. 177, 180-181 (1976). At the time of the revocation hearing, the juvenile was charged with, but not convicted of, breaking and entering in the daytime, and the Commonwealth, therefore, was obliged to produce evidence that would permit the judge to determine by a preponderance of the evidence that the juvenile had violated a condition of his probation by violating a criminal law. *Commonwealth* v. *Holmgren*, 421 Mass. 224, 226 (1995). Compare *Commonwealth* v. *Maggio*, 414 Mass. 193, 198 (1993) (violation of condition of probation must be found "at least to a reasonable degree of certainty"). "The mere filing of criminal charges against a probationer is not enough to show a violation of probation . . . because it does not give the probationer a realistic chance to confront his accusers and meet the evidence against him." *Commonwealth* v. *Calvo*, 41 Mass. App. Ct. 903, 904 (1996).

While "a probationer need not be provided with the full panoply of constitutional protections applicable at a criminal trial," he is entitled, at surrender hearings, to certain due process protections. *Commonwealth* v. *Durling*, 407 Mass. 108, 112 (1990). Among the minimum requirements of due process is the right to confront and cross-examine adverse witnesses absent a specific finding of good cause for not allowing confrontation. *Id.* at 113.

It is recognized, however, that the requirements of due process are flexible and "depend on the circumstances of each case and an analysis of the various interests at stake." *Id.* at 114. The

recognized and competing interests of the probationer and the Commonwealth[4] "cross at one point: both have an interest in a reliable, accurate evaluation of whether the probationer indeed violated the conditions of his probation." *Id.* at 116.

A specific judicial finding of good cause for not allowing a probationer to confront adverse witnesses is unnecessary if there is "a showing that the proffered evidence bears substantial indicia of reliability and is substantially trustworthy. . . ." *Id.* at 118. While hearsay that is not admissible under standard evidentiary rules may be utilized at probation revocation hearings, "[u]nsubstantiated and unreliable hearsay cannot, consistent with due process, be the entire basis of a probation revocation." *Ibid.* See *Commonwealth* v. *Podoprigora*, 48 Mass. App. Ct. 136, 137 (1999).

Here, the hearsay testimony of the police officer did not fall under any established exception to the hearsay rule and was offered as the only evidence of the alleged criminal conduct of the juvenile. That testimony was fatally devoid of factual detail or corroborating personal observations of the officer sufficient to render it reliable or to establish by a preponderance of evidence that the juvenile committed the charged crime. Contrast *Commonwealth* v. *Durling, supra* at 121-122. Compare *Commonwealth* v. *Mejias*, 44 Mass. App. Ct. 948, 949 (1998); *Commonwealth* v. *Wilson*, 47 Mass. App. Ct. 924, 925 (1999). Nor is it buttressed by corresponding or consistent hearsay testimony of another witness at the revocation hearing. Compare *Commonwealth* v. *Durling, supra* at 120-121; *Commonwealth* v. *Hill, ante* 147, 152-153 (2001). The officer's conclusory belief that Maria C. and her son did not want the juvenile in their apartment is without probative effect absent his testifying to the primary facts supporting his conclusions. Although his testimony

---

[4]In *Commonwealth* v. *Durling, supra* at 115-116, the court defined the various interests involved as the probationer's liberty interest and the Commonwealth's interests in (1) expeditiously dealing with a threat to the public welfare; (2) imposing effective punishment on a convicted criminal who is not being rehabilitated; (3) not replicating the expense and effort expended in originally convicting the probationer; and (4) in maintaining administrative efficiency and reducing the cost of revocation hearings. It also recognized that "presenting a witness with personal knowledge is not always possible [and] often unrealistic." *Id.* at 117.

attributing accusatory statements to two persons provides a marginal increase in the reliability of that testimony, its cumulative effect nevertheless falls far short of establishing by a preponderance of the evidence that the juvenile had committed any crime. Even had there been evidence establishing the reliability of the officer's hearsay testimony, there was no evidence of a "breaking" and scant evidence of the juvenile's intent. Absent substantially reliable evidence of criminality, there was no "good cause" to deny the juvenile his right to confront and cross-examine the witnesses against him.

We appreciate that trial judges often are overburdened and that a probationer's due process rights are not inflexible. We suggest, however, that the interests of justice would best be served in revocation proceedings based entirely on hearsay evidence of criminal conduct if the judge placed on record a brief reasoned assessment of the reliability of the hearsay evidence and an express finding of good cause for the Commonwealth not presenting a witness with personal knowledge of a probation violation.[5] Beyond that, the hearsay evidence must be sufficient to prove by a preponderance of the evidence that the probationer committed the charged crime.

The orders revoking the juvenile's probation and committing him to the custody of the Department of Youth Services are vacated.

*So ordered.*

---

[5]While *Commonwealth* v. *Durling* does not establish clearly whether a demonstration of the reliability and trustworthiness of hearsay evidence constitutes a showing of good cause obviating the need to permit the defendant to confront persons who allegedly witnessed his criminal conduct, *id.* at 118, or whether both the reliability of the hearsay *and* good cause for not producing the witness must be established, *id.* at 118-119, 122, this court has interpreted *Durling* as permitting revocation solely on the basis of "hearsay evidence [that] has substantial indicia of reliability." *Commonwealth* v. *Calvo*, 41 Mass. App. Ct. at 904. It is noteworthy that rule 6(b) of the District Court Rules for Probation Violation Proceedings, effective on January 3, 2000, provides: "Where the sole evidence submitted to prove a violation of probation is hearsay, that evidence shall be sufficient only if the court finds in writing (1) that such evidence is substantially trustworthy and demonstrably reliable *and* (2), if the alleged violation is charged or uncharged criminal behavior, that the probation officer has good cause for proceeding without a witness with personal knowledge of the evidence presented" (emphasis supplied).