## COMMONWEALTH *vs*. JAIME NEGRON.

Suffolk. April 6, 2004. - May 14, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Supreme Judicial Court,* Superintendence of inferior courts. *District Attorney. Practice, Criminal,* Probation, Revocation of probation, Appeal. *Witness,* Unavailability. *Evidence,* Spontaneous utterance, Hearsay. *Due Process of Law,* Probation revocation.

This court concluded that where the office of the district attorney participated in probation revocation proceedings, it was a party to those proceedings for purposes of appeal and could take a direct appeal from an order finding that a defendant had not violated the terms of his probation. [686-688]

This court could not determine whether the judge at a probation revocation hearing correctly struck as hearsay the testimony of a police officer regarding the statements made by the defendant's wife, who had claimed spousal privilege in refusing to testify against the defendant and was therefore unavailable as matter of law, where, although it appeared from the record that the wife's statements were reliable (in that they were factually detailed, based on personal knowledge and direct observation, made close in time to the events in question, and corroborated by the observations of the police officer), the hearing was stayed before the officer was subjected to cross-examination, making it impossible to say whether the hearsay would still be deemed reliable after such cross-examination. [688-692]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on April 25, 2003.

The case was reported by *Spina,* J.

The case was submitted on briefs.

*Thomas F. McGuire* for the defendant.

*William M. Bennett,* District Attorney, *& Jane Davidson Montori & Katherine E. McMahon,* Assistant District Attorneys, for the Commonwealth.

COWIN, J. Pursuant to G. L. c. 211, § 3, the Commonwealth filed a petition with a single justice of this court seeking relief from a District Court judge's evidentiary rulings at the defendant's probation revocation hearing. The single justice

reserved and reported the matter to the full court. We must resolve first whether the Commonwealth is a party to a probation revocation proceeding with standing to pursue an adverse evidentiary ruling by means of a direct appeal, thereby precluding a claim for relief under G. L. c. 211, § 3. The merits of the petition involve a challenge to the judge's evidentiary rulings at the probation revocation hearing concerning the admissibility of statements of the defendant's wife. We conclude that when the office of the district attorney participates in probation revocation proceedings, it is a party to those proceedings for purposes of appeal and may take a direct appeal from an order finding that a defendant did not violate the terms of his probation. No such finding was entered in this case.[1] Nevertheless, because the parties have fully briefed and argued the issues presented by the case, and because we conclude that the judge erred in his evidentiary rulings, it would needlessly frustrate the administration of justice to remand the matter for completion of the probation revocation proceedings without resolving the evidentiary issues. See *Commonwealth* v. *Chatfield-Taylor*, 399 Mass. 1, 3 (1987). We therefore address the merits of the claim and direct the single justice to remand the case to the District Court for further proceedings consistent with this opinion.

*Appropriateness of relief under G. L. c. 211, § 3.* The first matter we must confront is whether the Commonwealth (acting through the district attorney) is a party to probation revocation proceedings. Probation officers function within the judicial branch, see *First Justice of the Bristol Div. of the Juvenile Court Dep't* v. *Clerk-Magistrate of the Bristol Div. of the Juvenile Court Dep't*, 438 Mass. 387, 400-401 (2003), and the office of the district attorney is considered to fall within the executive branch. *Burlington* v. *District Attorney for the N. Dist.*, 381 Mass. 717, 721 (1980). "That separateness does not, however, lead to the conclusion that a district attorney's office may not assist the probation service in presenting evidence in support of a position [of] the probation service . . . . The compartments are not watertight." *Commonwealth* v. *Tate*, 34

---

[1] The revocation proceedings were stayed so the Commonwealth could pursue its application for relief.

Mass. App. Ct. 446, 448 (1993). Thus, an assistant district attorney may participate in probation hearings by providing legal representation to the probation department without interfering with that department's internal functioning. See *Commonwealth* v. *Milton,* 427 Mass. 18, 23 (1998). The assistant district attorney may argue on the probation department's behalf, *id.,* and may examine and cross-examine witnesses. *Commonwealth* v. *Tate, supra.*[2]

When a probation officer "surrenders" a defendant for an alleged violation of probation and subjects the defendant to possible revocation of that probation, the district attorney is the real party in interest. It is the district attorney who originally charges and prosecutes the defendant. Although a judge imposes the sentence underlying probation, it is the office of the district attorney that has primary interest "in imposing effective punishment on a convicted criminal when rehabilitation [i.e., probation] is not possible." *Commonwealth* v. *Durling,* 407 Mass. 108, 116 (1990). "When an individual is on probation, the Commonwealth has already gone through the expense and effort of convicting him. The Commonwealth has a strong interest in being able to revoke probation in appropriate cases without having to repeat its effort." *Id.* Our cases have recognized the executive branch's interest in probation revocation proceedings notwithstanding the fact that the proceeding is initiated by the probation department. When a defendant appeals from a revocation of probation and imposition of sentence, it is the district attorney who appears as the adversary. See, e.g., *Commonwealth* v. *Maggio,* 414 Mass. 193 (1993); *Commonwealth* v. *Durling, supra.* Because of the intertwined relationship between probation revocation proceedings and the underlying criminal prosecution, it follows logically that the Commonwealth retains standing to appeal from an adverse decision in such proceedings. Thus, the Commonwealth may seek review when it participates in the proceedings and such proceedings are concluded with a

[2]In the instant case, it appears from the transcript that only the assistant district attorney appeared for the Commonwealth at the probation revocation proceedings.

finding that the defendant has not violated probation.[3]

A defendant may take a direct appeal from an order revoking his probation, see *Commonwealth* v. *Christian*, 429 Mass. 1022 (1999). When the revocation proceeding concludes with a decision adverse to the Commonwealth, we see no reason why the Commonwealth should not be able to appeal as well. In the future, as to any probation matter presently pending, the Commonwealth may appeal to the Appeals Court. Accordingly, relief pursuant to G. L. c. 211, § 3, will not be available with respect to interlocutory rulings that could adequately be reviewed in a direct appeal.[4] For the reasons indicated, however, we consider the merits of this case and therefore set forth the necessary background facts.

*Evidentiary rulings.* In August, 2002, the defendant was convicted of various offenses in the District Court and sentenced to one year's probation. During that probationary period, a criminal complaint issued charging the defendant with assault on his wife, malicious damage to a motor vehicle, malicious destruction of property exceeding $250 (two counts), leaving the scene of property damage, and arson of a dwelling house.

Following the issuance of the new complaint, a probation revocation proceeding was held. At that hearing, the defendant's wife was called as a Commonwealth witness but claimed her spousal privilege under G. L. c. 233, § 20,[5] and did not testify against the defendant. In place of the wife's testimony, the

---

[3]Other jurisdictions permit the State to appeal from an adverse probation revocation decision, see *State* v. *DeVoe*, 560 P.2d 12, 13-15 (Alaska 1977); *State* v. *Huckeba*, 258 Ga. App. 627, 632-635 (2002). Contrast *State* v. *Blackman*, 488 So. 2d 644 (Fla. Dist. Ct. App. 1986) (neither State statutes nor rules afford State any remedy when court determines probation should not be revoked).

[4]Relief under G. L. c. 211, § 3, "is extraordinary and will be exercised only in the most exceptional circumstances . . . 'the party seeking relief must demonstrate both a substantial claim of violation of his substantive rights and error that cannot be remedied under the ordinary review process.' " *Campiti* v. *Commonwealth*, 417 Mass. 454, 455-456 (1994), quoting *Dunbrack* v. *Commonwealth*, 398 Mass. 502, 504 (1986).

[5]General Laws c. 233, § 20, provides, in pertinent part, that save certain exceptions not relevant here, "neither husband nor wife shall be compelled to testify in the trial of an indictment, complaint or other criminal proceeding against the other."

Commonwealth introduced testimony of Officer Michael Lewis of the Springfield police department that when the police arrived at the wife's apartment, she told them that the defendant "had torched her apartment, smashed her car and [inaudible] the car." The judge, however, subsequently struck this testimony. He did so because he ruled that despite the wife's claim of privilege, she was "available," and therefore, her statements were inadmissible hearsay of questionable reliability. The Commonwealth then sought to have Officer Lewis testify to the wife's statements pursuant to the spontaneous utterance exception to the hearsay rule.[6] However, when the officer testified that the wife did not appear upset when she spoke to him, just "very concerned for her safety," the judge determined that the officer's repetition of the wife's statements did not qualify for admission under the spontaneous utterance exception. Officer Lewis was permitted to testify that when the police entered the apartment, it was engulfed in a smoky haze due to the fact that the stove's four electric burners had been turned on with "the covers on them," and the covers had all been "charred." The apartment was in a state of disarray, with items broken and furniture overturned. The police also observed an automobile outside with damage to the front end and scrapes along the back.[7] We consider the rulings by the judge.

As the defendant concedes, the ruling that the wife was avail-

---

[6]A spontaneous utterance will be admitted in evidence if (1) there is an occurrence or event "sufficiently startling to render inoperative the normal reflective thought processes of the observer," and (2) the declarant's statement was a "spontaneous reaction to the occurrence or event and not the result of reflective thought." 2 McCormick, Evidence § 272, at 204 (5th ed. 1999). See *Commonwealth* v. *Santiago*, 437 Mass. 620, 623 (2002).

[7]There is a further issue concerning the admissibility of two police reports that the Commonwealth attempted to introduce at the hearing. The judge permitted them to be marked for identification only. One report is that of an officer who apparently was on vacation at the time of the hearing. The record is not clear whether Officer Lewis or another officer authored the second report. Although the Commonwealth refers extensively to the contents of these police reports in its statement of facts, the Commonwealth makes no argument on appeal supporting the admissibility of the reports (apart from its argument concerning the admissibility of Officer Lewis's testimony). See *Commonwealth* v. *Durling*, 407 Mass. 108, 120-121 (1990). We regard the issue of admissibility of the reports as a separate matter and do not reach it as it has not been briefed. We do not discuss in this opinion any of the material contained in the reports alone and not repeated in testimony at the hearing.

able was incorrect. See *Commonwealth* v. *Fisher*, 433 Mass. 340, 355 (2001) ("a witness is unavailable if the witness makes a valid claim of privilege"). The judge did not abuse his discretion, however, in determining that the wife's statements to the police did not meet the requirements of a spontaneous utterance. The evidence supported the ruling, as Officer Lewis testified that when he arrived at the scene, the wife "didn't appear to be upset." See *Commonwealth* v. *Santiago*, 437 Mass. 620, 623 (2002). Although the Commonwealth contends that further inquiry would elicit evidence to support the applicability of the spontaneous utterance exception, the time for such inquiry was at the probation revocation proceeding before the judge issued his ruling.

Based on his determination that the wife was available, the judge concluded that her statements could not be admitted. He considered that her exercise of the spousal privilege "put the reliability of the hearsay into question." This ruling was based on a confusion of applicable criteria. Having claimed the privilege, the wife was, as matter of law, unavailable to testify. Her assertion of that privilege has no bearing on whether the statements made to the officers at the scene are otherwise reliable.

The proper inquiry is whether the hearsay evidence itself had substantial indicia of reliability establishing good cause for overcoming the need for confrontation. See *Commonwealth* v. *Maggio*, 414 Mass. 193, 196 (1993); *Commonwealth* v. *Durling*, 407 Mass. 108, 118 (1990). In the *Durling* case, we described the Federal due process principles set forth by the Supreme Court in *Morrissey* v. *Brewer*, 408 U.S. 471 (1972), and *Gagnon* v. *Scarpelli*, 411 U.S. 778 (1973), for a final probation revocation hearing: "*Morrissey* and *Gagnon* establish that the minimum requirements of due process include ' "(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of the evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional

parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole." *Morrissey* v. *Brewer, supra* at 489.' *Gagnon* v. *Scarpelli, supra* at 786." *Commonwealth* v. *Durling, supra* at 113.

In the *Durling* case, we reviewed the type of evidence necessary to satisfy the Federal due process requirement and to warrant a finding that probation had been violated. "We indicated that a defendant's probation could be revoked based solely on hearsay evidence of his violation of probation, as long as the hearsay evidence bore substantial indicia of reliability." *Commonwealth* v. *Maggio, supra* at 196, citing *Commonwealth* v. *Durling, supra* at 121-122. The *Durling* case was somewhat ambiguous regarding whether reliable and trustworthy hearsay evidence constitutes a showing of good cause obviating the need to permit the defendant to confront persons who allegedly witnessed his conduct, *id.* at 118, or whether the reliability of the hearsay and good cause for not producing the witness must separately be established. *Id.* at 118-119, 122. See *Commonwealth* v. *Emmanuel E.*, 52 Mass. App. Ct. 451, 455 n.5 (2001). Any ambiguity was clarified by our decision in *Commonwealth* v. *Maggio, supra* at 197, where we stated: "[T]he *Morrissey-Gagnon* standards require that defendants be given the right to confront and to cross-examine witnesses, unless the judge finds 'good cause' to dispense with these requirements. We held in [*Commonwealth* v.] *Durling, supra*, that the existence of reliable hearsay evidence provides good cause to deny a defendant his right to confront and to cross-examine witnesses during a final probation revocation proceeding." In other words, if reliable hearsay is presented, the good cause requirement is satisfied.

We turn now to the application of this principle to this case. We have examined the transcript of the hearing and it appears from the record that the wife's statements are reliable. They are factually detailed, based on personal knowledge and direct observation, made close in time to the events in question, and corroborated by the observations of Officer Lewis. In addition, it is a crime for a citizen to make a false report of a crime to police officers, see G. L. c. 269, § 13A, a factor that "bolsters the reliability of the report[]." *Commonwealth* v. *Durling, supra*

at 121.[8] Nevertheless, we cannot make an ultimate determination as to the reliability of the hearsay on the present state of the record. The hearing was stayed before Officer Lewis was subject to cross-examination. Therefore, we cannot determine if the hearsay would still be deemed reliable after such cross-examination. The matter must be remanded for further proceedings consistent with this opinion.[9]

*So ordered.*

---

[8]Admission of the hearsay also includes, of course, an additional implicit determination that the witness who is reporting the hearsay, here Officer Lewis, is doing so accurately. No issue is raised as to the accuracy of the officer's reporting.

[9]The United States Supreme Court issued its opinion in *Crawford* v. *Washington,* 541 U.S. 36 (2004) (holding that admission of the statement of an unavailable witness violates the confrontation clause of the Sixth Amendment to the United States Constitution) after the submission of briefs in this case. As neither party has argued (in supplemental filings) the case's applicability, we deem the issue waived.