COMMONWEALTH vs. CHARLES KING.

No. 07-P-397.

Bristol. March 18, 2008. - May 19, 2008.

Present: GELINAS, KANTROWITZ, & FECTEAU, JJ.

*Practice, Criminal,* Probation, Revocation of probation. *Due Process of Law,* Probation revocation. *Evidence,* Hearsay.

A trial court judge erred in finding a criminal defendant in violation of his probation, where the only evidence presented at the probation revocation hearing, a one-page police report, contained observations by the preparing officer that fundamentally undermined the credibility of the complaining witness and stripped it of the requisite substantial indicia of reliability and trustworthiness. [740-742]

COMPLAINTS received and sworn to in the Fall River Division of the District Court Department on April 20, 2004, and June 1, 2004, respectively.

A proceeding for revocation of probation was heard by *Lance J. Garth,* J.

*Geoffrey DuBosque* for the defendant.

*William R. Connolly,* Assistant District Attorney, for the Commonwealth.

KANTROWITZ, J. On June 9, 2004, the defendant, Charles King, pleaded guilty to assault by means of a dangerous weapon, G. L. c. 265, § 15B; malicious destruction of property over $250, G. L. c. 266, § 127; and assault and battery, G. L. c. 265, § 13A.[1] For each offense, the defendant was sentenced to eighteen months' imprisonment, concurrent, suspended for one year, with various conditions of probation.

---

[1] The incident leading to the charge of assault and battery occurred on April 17, 2004. The remaining two incidents occurred on May 28, 2004. The record is unclear as to the identity of the victims in these incidents.

On August 17, 2005,[2] he was served with a notice of probation violation and hearing, which alleged new criminal offenses.[3] At the subsequent final surrender hearing, where no testimony was taken, the defendant was found in violation and sentenced to jail for eighteen months.

On appeal, the defendant argues that there was insufficient evidence to find him in violation of his probation because the only evidence presented was unreliable and untrustworthy hearsay. We agree and reverse.

*Facts.* The evidence of the defendant's violation of his probation consisted of a one-page police report prepared by Officer Denis Gagne of the Fall River police department. The report recounted that on August 3, 2005, Officer Gagne and another officer responded to a call concerning a domestic incident at the apartment of the alleged victim, Lisa Ziccardi. Upon their arrival, Ziccardi told the officers that about one and one-half hours earlier, the defendant had knocked at her apartment door to retrieve some personal items from the apartment. The defendant and Ziccardi argued through the door for several minutes. The defendant left, and returned twice, and the arguing through the door continued for several minutes. On the third occasion, the defendant suddenly kicked the door in and entered the apartment. Once inside, Ziccardi said, the defendant pulled two steak knives from a kitchen drawer, rubbed the knives together, and said, "I gonna fuckin kill you [*sic*]." According to the report, the officers observed the apartment door frame and molding in shatters, consistent with having been forced open. The report also described Ziccardi as "sarcastic," noting that

---

[2]We note that while the defendant's one-year suspended sentence was due to expire on June 8, 2005, the conduct giving rise to his violation occurred on August 3, 2005. The record provides no explanation and no issue has been raised concerning it.

[3]On August 5, 2005, the District Court issued a criminal complaint charging the defendant with assault, G. L. c. 265, § 13A(*a*); assault by means of a dangerous weapon, G. L. c. 265, § 15B(*b*); and destruction of property under $250, G. L. c. 266, § 127. We were informed at oral argument that these charges were subsequently dismissed. That "the charges against the defendant . . . were later dismissed for failure to prosecute is immaterial to the validity of the revocation, as would be an acquittal." *Commonwealth* v. *Mejias*, 44 Mass. App. Ct. 948, 949 (1998), citing *Commonwealth* v. *Holmgren*, 421 Mass. 224, 225-227 (1995).

"[i]t didn't seem apparent that the incident she described had any emotional impact on her." It also noted that Gagne presented her with a copy of the Massachusetts domestic violence victim rights form, which she refused to read or sign, saying, "I know what its [*sic*] all about." The defendant was not present at the scene when the officers arrived.

Although the Commonwealth issued summonses for both Ziccardi and Gagne, neither appeared to testify at the probation surrender hearing on September 12, 2005. The Commonwealth indicated that while a summons was mailed to Ziccardi's last known address, she had failed to appear as instructed. The prosecutor requested a bench warrant to compel her attendance. The prosecutor further explained that Gagne was on an assigned detail, but could "be available if need be," to testify as to what was contained in the police report. Counsel for the defense indicated that she was ready to go forward with the hearing.

The judge stated, "I read the report . . . [s]ubscribed by the officer," and did not indicate a need to bring in Gagne. As for Ziccardi, the prosecutor stated that he felt it "[w]ould be best to have the alleged victim here in light of the background."[4] In response, the judge merely noted that Ziccardi failed to respond to the summons and that, "through no fault of the probation department, [the alleged victim] has made herself unavailable." Counsel for the defendant questioned Ziccardi's credibility, noting her past accusations "have been dismissed because of [her] lack of cooperation," and argued that "[b]ecause there's no witnesses here," the judge should find no violation of probation.

The court found the defendant in violation, reasoning that the police report was authored "by a percipient witness who made not only observations of the locus of the alleged event but spoke with the alleged victim."[5]

---

[4]The defendant had been served with an earlier notice of violation of probation for other alleged conduct with Ziccardi on a different occasion. On March 11, 2005, during a probation surrender hearing before the same judge, the probation officer told the court, "It was a girlfriend deal. She was highly intoxicated by the police officer's opinion. I think there was some fabrication of the whole story. . . . I — I don't have a violation. I'm not going to waste the court's time." Upon the probation officer's request, no violation was found.

[5]The fact that the judge's findings were issued from the bench and not

*Discussion.* "At the [probation] revocation hearing, the judge must determine, as a factual matter, whether the defendant has violated the conditions of his probation." *Commonwealth* v. *Durling,* 407 Mass. 108, 111 (1990). "The finding of a violation is not by a jury but by a judge, and is based only on a preponderance of the evidence, not proof beyond a reasonable doubt." *Commonwealth* v. *Wilcox,* 446 Mass. 61, 65 (2006). While a judge may consider reliable hearsay at the hearing, "[u]nsubstantiated and unreliable hearsay cannot . . . be the entire basis of a probation revocation." *Durling, supra* at 118. "[A] showing that the proffered evidence bears substantial indicia of reliability and is substantially trustworthy" provides good cause to deny a defendant his right to confront and cross-examine witnesses. *Ibid.* Where hearsay is the only evidence of a violation, "the indicia of reliability must be substantial" to overcome the defendant's "interest in cross-examining the actual source." *Ibid.*

The Commonwealth correctly notes that the existence of reliable hearsay satisfies the requirement for good cause, obviating the need for confrontation.[6] See *Commonwealth* v. *Nunez,* 446 Mass. 54, 58-59 (2006), quoting from *Commonwealth* v. *Ne-*

made in writing is not reversible error. Rule 6(b) of the District Court Rules for Probation Violation Proceedings (West 2000), requires that where hearsay is the "sole evidence submitted to prove a violation of probation," the court find "in writing" that the evidence is reliable and good cause exists. See *Commonwealth* v. *Ivers,* 56 Mass. App. Ct. 444, 448 (2002) ("A judge who thinks it appropriate to rely only on hearsay in revocation proceedings must, conformably with rule 6[b], make some written explanation of why he considered that evidence substantially trustworthy"). While written findings are preferable, the judge here completed the probation violation finding and disposition form, and made oral findings on the record. The oral recitation of reasons for revocation, when transcribed, satisfies the requirement of a written statement by the fact finder. *Fay* v. *Commonwealth,* 379 Mass. 498, 504-505 (1980).

[6]The defendant argues that under rule 6(b), the Commonwealth must prove reliability and good cause separately. Rule 6(b), which was adopted in 2000, requires that where hearsay is the sole evidence of a violation, the judge find in writing: "(1) that such evidence is substantially trustworthy and demonstrably reliable *and* (2), if the alleged violation is charged or uncharged criminal behavior, that the probation officer has good cause for proceeding without a witness with personal knowledge of the evidence presented" (emphasis added). While the language of rule 6(b) establishes a two-prong inquiry, Supreme Judicial Court decisions subsequent to the rule's adoption have held that good cause need not be separately proven if the hearsay is deemed sufficiently reli-

*gron*, 441 Mass. 685, 691 (2004) ("if reliable hearsay is presented, the good cause requirement is satisfied"). See also *Commonwealth* v. *Maggio*, 414 Mass. 193, 197 (1993).

The sole evidence considered by the judge here was the one-page police report. The majority of the narrative report merely relates what the alleged victim told the officers when they arrived on the scene. See *Commonwealth* v. *Ortiz*, 58 Mass. App. Ct. 904, 906 (2003) (reversing finding of probation violation where sole evidence was officer's repetition of what he had been told by complainant plus officer's observation of two large dents on complainant's car, which complainant said defendant had struck). See also *Commonwealth* v. *Delaney*, 36 Mass. App. Ct. 930, 931-932 (1994) (statement by defendant's ex-wife that their daughter told her that defendant was in car in ex-wife's driveway, in violation of defendant's probation, was inadmissible hearsay; daughter was available to testify, and ex-wife's statement did not bear required indicia of trustworthiness).

The only personal observation reported by Officer Gagne that supported a finding of probation violation was the broken door frame and molding. While compelling, it was insufficient in this case, given Ziccardi's demeanor after the incident. After experiencing someone breaking though her door to gain entrance into her dwelling and committing an assault on her, Ziccardi appeared unaffected by the encounter. According to Gagne, "[i]t didn't seem apparent that the incident she described had any emotional impact on her." She was "sarcastic" to the responding officers and refused to read or sign the Massachusetts domestic violence victim rights form presented to her. While she may well have suffered the harm described in the police report, it was incumbent that she describe it to the judge. The observations noted in the police report fundamentally undermine her credibility, stripping it of the requisite substantial indicia of reliability and trustworthiness.[7] Compare *Commonwealth* v. *Negron*, 441

---

able. See *Commonwealth* v. *Nunez*, 446 Mass. 54, 58-59 (2006), quoting from *Commonwealth* v. *Negron*, 441 Mass. 685, 691 (2004).

[7]The Commonwealth argues that the reliability of the police report is bolstered by the fact that it is a crime for a citizen to make a false report of a crime to police officers, see G. L. c. 269, § 13A. Given Ziccardi's lack of cooperation with the court and police in the past, this assertion, while ordinarily significant, is unpersuasive in this case. See note 4, *supra*.

Mass. at 691, quoting from *Commonwealth* v. *Maggio, supra* at 197 ("[T]he existence of reliable hearsay evidence provides good cause to deny a defendant his right to confront and to cross-examine witnesses during a final probation revocation proceeding").[8] Her presence in court was necessary.

We recognize that courts are busy. The Commonwealth, by its own admission, could have fairly easily secured the presence in court of Officer Gagne, who was on an assigned detail, but available if needed. More importantly, the Commonwealth, recognizing the need for Ziccardi, requested a bench warrant.

The order revoking the defendant's probation is reversed, and the case is remanded for any further proceedings that may be advisable. See *Commonwealth* v. *Delaney*, 36 Mass. App. Ct. at 933.

*So ordered.*

---

[8]In *Negron, supra* at 688-689, the responding officer testified to statements the victim made when the police arrived on the scene. Although hearsay, the statements were deemed sufficiently reliable because they were "factually detailed, based on personal knowledge and direct observation, made close in time to the events in question, and corroborated by the observations of [the officer]." *Id.* at 691. The victim was noted to be "very concerned for her safety," and the apartment was "engulfed in a smoky haze" and was "in a state of disarray, with items broken and furniture overturned." *Id.* at 689. These significant observations by the officers bolstered the reliability of the victim's hearsay statements as reported by the officer.