## Commonwealth vs. Shevren Henderson.

No. 11-P-1302.

Hampshire. April 6, 2012. - October 19, 2012.

Present: Mills, Brown, & Sikora, JJ.[1]

*Practice, Criminal,* Revocation of probation. *Due Process of Law,* Probation revocation. *Evidence,* Hearsay.

A District Court judge properly entered an order revoking a criminal defendant's probation based exclusively on hearsay evidence of the alleged violation, in circumstances where the evidence satisfied the criteria of substantial reliability prescribed by case law and rule 6(b) of the District Court Rules for Probation Violation Proceedings. [676-679] Brown, J., dissenting.

Complaints received and sworn to in the Eastern Hampshire Division of the District Court Department on June 22 and July 8, 2009, and February 11, 2010.

A proceeding for revocation of probation was heard by *Laurie MacLeod,* J.

*Barbara Munro* for the defendant.

*Cynthia M. Pepyne,* Assistant District Attorney, for the Commonwealth.

Sikora, J. In this appeal, we must measure the degree of reliability required of hearsay information submitted by the Commonwealth in support of the revocation of a probationer's freedom.

*Background.* Affidavit information, a police incident report, and a verified domestic abuse prevention complaint pursuant to G. L. c. 209A (all to be recounted in greater detail) provide the following basic information. On February 2, 2011, a verbal argument flared between the defendant, Shevren Henderson, and his girlfriend. She reported that he had physically battered

---

[1]Justice Mills participated in the deliberation on this case prior to his retirement.

her. When police and emergency medical technicians arrived at her residence, he had left. An ambulance transported her to the hospital. She displayed bruises on her face, and she received stitches to her lip and foot.

At the time, the defendant was serving probation. He had pleaded guilty to three counts of assault and battery (separate incidents) and one count of criminal harassment. He had received three concurrent sentences, each of two and one-half years in the house of correction, six months to be served and the balance suspended for one year. The conditions of probation included the standard requirement of obedience to "all court orders and all local, [S]tate, and [F]ederal laws." His probation was scheduled to end on June 30, 2011. As a result of the incident of February 2, 2011, his probation officer issued three notices of violation, each charging the defendant with assault and battery by means of a dangerous weapon, a shod foot.

A revocation hearing went forward in the District Court on March 11, 2011. The probation officer had summoned both the girlfriend and the responding police officer. However, neither appeared. From a notarized letter submitted by the girlfriend, the judge found her to be an uncooperative witness and her absence supported by good cause. The judge found also that the police officer had not received timely service and had a previously scheduled medical appointment at the time of the hearing. Those circumstances supported good cause for his absence.

The judge received the testimony of the probation officer, the girlfriend's affidavit in support of her complaint for a G. L. c. 209A abuse prevention order submitted on the day after the incident, the police report, and the girlfriend's notarized letter reporting her unwillingness to participate in the revocation hearing and requesting the judge to maintain the defendant's probation. The judge found the defendant in violation of his probation and reinstated the original concurrent sentences. The defendant has appealed upon the ground that the evidence submitted at the revocation hearing lacked the trustworthiness required by due process for revocation.[2]

---

[2]As a secondary argument, he contends that the evidence failed to show the use of his shod foot as a dangerous weapon. The absence of that element from the Commonwealth's evidence is immaterial. See note 8, *infra.*

*Analysis.* For the following reasons, the evidence presented at the revocation hearing satisfied the standards of due process and practical fairness established by the governing case of *Commonwealth* v. *Durling*, 407 Mass. 108, 118-122 (1990), and criteria established as a result of that decision by rule 6(b) of the District Court Rules for Probation Violation Proceedings (2000). Those standards establish that the revocation of probation may rest exclusively upon hearsay evidence of the alleged violation so long as the hearsay carries the indicia of substantial reliability and provides a reasonable preponderance of evidence. *Commonwealth* v. *Durling, supra* at 118.

1. *Standards.* Ordinarily the revocation judge should excuse the witness originating the hearsay information only for "good cause"; however, if the hearsay information satisfies the standard of substantial reliability or trustworthiness, the need to show good cause disappears. *Id.* at 118, 122. See *Commonwealth* v. *Negron*, 441 Mass. 685, 691 (2004); *Commonwealth* v. *Nunez*, 446 Mass. 54, 58-59 (2006). Citing *Commonwealth* v. *Durling, supra*, and *Commonwealth* v. *Delaney*, 36 Mass. App. Ct. 930, 932 n.4 (1999), the commentary to rule 6(b) offers five criteria of substantial reliability: (1) whether the statements are "factually detailed, rather than generalized and conclusory"; (2) whether the statements are "based on personal knowledge and direct observation by the source"; (3) whether the statements are "corroborated by evidence submitted by the probationer"; (4) whether the statements were "provided under circumstances . . . support[ing] the veracity of the source . . ."; and (5) whether the statements come from "a disinterested witness." Mass. Ann. Laws Court Rules, District Court Rules for Probation Violation Proceedings, at 95-96 (LexisNexis 2011-2012). This list, of course, is not exhaustive. At a revocation hearing, the hearsay information need not satisfy all five criteria of trustworthiness. *Commonwealth* v. *Patton*, 458 Mass. 119, 133 (2010). As one more specific indicium of reliability, sworn statements in the nature of affidavits and deposition testimony have traditionally been eligible for admission at revocation hearings. *Commonwealth* v. *Durling, supra* at 114-115, citing *Morrissey* v. *Brewer*, 408 U.S. 471, 489 (1972), and *Gagnon* v. *Scarpelli*, 411 U.S. 778, 783 n.5 (1973).

2. *Application.* In this instance, the District Court judge was entitled to rely upon four sources of hearsay information: (1) a G. L. c. 209A complaint and supporting affidavit executed by the defendant's girlfriend on the day after the alleged assault and battery; (2) the police report drafted on the day of the incident by the police officer responding to the scene; (3) the girlfriend's letter of February 28, 2011 (twenty-six days after the incident), to the District Court judge requesting that the judge not revoke probation; and (4) the testimony of the probation officer reporting his conversation with the responding police officer about the officer's observations at the scene. The three documents (the c. 209A papers, the police incident report, and the girlfriend's subsequent letter of February 28, 2011) all came into evidence as exhibits. The judge relied especially upon the c. 209A complaint and supporting affidavit, as well as the police incident report.

In the G. L. c. 209A complaint, the girlfriend reported that she was "in a dating or engagement relationship" with the defendant, that he "placed [her] in fear of imminent serious physical harm," and that he "caused [her] physical harm." Her attached affidavit narrates the incident. It appears in the margin. Its gist is that the defendant instigated a fight with her and that, as a result, she went to the hospital and received stitches to her upper lip and foot.[3]

The responding police officer wrote his incident report on the evening of the event. He described the girlfriend's account of

---

[3]The full text of the affidavit is as follows.

"On or about February 2, 2011, the Defendant She[vr]en Henderson came to my house around 3 P.M. I was on the phone with a friend and he told me to get off the phone. I did. We started to argue about how he do[es] things for me and my kids, I told him to go down stairs and leave me alone. He said he was leaving, he left[] and came right back. I kept telling [him] to just leave. I went upstairs, he was downstairs making a phone call then came upstairs[,] got undress[ed] and got in my bed. We [were] talking normal to each other[,] then he just went off I'm a bitch etc. Told me he is not leav[ing]. [I] do need to call the cops[.] I said fine[,] picked up my phone[,] dial 911[.] We started to flight [*sic*]. . . . My mother was down the street[,] c[a]me to my house[,] but he [had] already r[u]n out the back door. The cops and the EMT came. In BayState Hosp. I received stitches to the upper lip and foot."

the incident and his observations that she "sustained visible bruises to her face as well as a cut lip" and that an ambulance transported her to Baystate Medical Center.[4] The girlfriend's subsequent letter of February 28, 2011, reported to the judge that she was "no longer willing to participate in legal proceedings concerning Mr. Henderson," and she requested the judge "not to revoke his probation." Her letter did not renounce or revise in any respect her allegations of the G. L. c. 209A complaint and affidavit.[5] She was retreating from the sanctions for the battery, but not from her account of it.

The final element of evidence consisted of the probation officer's testimony that his conversation with the responding

---

[4]The text of the incident report consisted of the following:

"[The defendant's girlfriend] reports that her on and off boyfriend She[vr]en Henderson of the past 4 years struck her several times to the facial area with a closed fist.

"Mr. Henderson started verbally fighting with [his girlfriend] when he arrived at [her residence] about 1300 hours on the above date [February 2, 2011]. When [the girlfriend] attempted to go down stairs[,] Mr. Henderson grabbed [her] and struck her several times with a closed fist to the facial area. [She] sustained visible bruises to her face as well as a cut lip.

"Mr. Henderson fled prior to police arrival. [The girlfriend] was advised of her 209A rights.

"[She] was transported to BMC via AMR Rig # 410."

[5]The letter of February 28, 2011, recited the following:

"To whom it may concern:

"My name is . . . , girlfriend of Mr. Shevren Henderson. I am no longer willing to participate in legal proceedings concerning Mr. Henderson. I feel safe in his presence. Mr. Henderson is a compassionate, caring, well mannered, hard-working young man. He is also a great spouse and a wonderful father. It would serve no benefit to our family, his place of employment . . . and most important the Commonwealth of Massachusetts to incarcerate such a man. My only request is that the Honorable Court of Belchertown not . . . revoke his probation. Thank you.

"Respectfully submitted,

"/s/

"[Notarization]"

police officer confirmed that the officer had remembered the victim's bloody lip.[6]

In these circumstances, the hearsay information satisfies the criteria of substantial reliability prescribed by the *Durling* decision and by rule 6(b) of the District Court Rules for Probation Violation Proceedings. The G. L. c. 209A affidavit is "factually detailed, rather than generalized and conclusory," as required by criterion one of the rule. The statements of the same affidavit are "based on personal knowledge and observation by the source," as required by criterion two of the rule. The statements arose "under circumstances that support the veracity of the source," as required by criterion four of the rule: that is, the circumstances consisted of the submission of a formal c. 209A complaint to a judge on the day following an alleged battery.[7] The statements of the police incident report originated from "a disinterested witness," as required by criterion five of the rule. See commentary to rule 6(b), *supra*. The incident report qualifies under the *Durling* standard of trustworthiness (a) because it contains a percipient observation by the police author of the bruises and bloody lip of the girlfriend, and (b) because the creation of a false police report would carry serious sanctions for the officer. 407 Mass. at 121. Finally, the girlfriend's subsequent letter did not contradict or in any way revise the specific allegations of her c. 209A affidavit.[8]

*Conclusion.* For the these reasons, we affirm the order revoking probation.[9]

*So ordered.*

---

[6]The probation officer reported to the judge that the police officer had not received his summons to court as of the evening before the revocation hearing and that the officer would be unable to attend on the following day because he had to transport his mother to a medical appointment at the time of the hearing.

[7]The girlfriend subsequently broke off prosecution of the request for an abuse prevention order.

[8]No serious misalignment between the c. 209A affidavit and the police report is apparent. No materiality arises from the distinction between the revocation ground of assault and battery by means of a dangerous weapon (shod foot) and the described simple assault and battery by punches to the face of the victim. The probation agreement required categorically that the probationer comply with the law. Beating a weaker victim constitutes an elemental violation of the law with or without the aggravation of a shod foot.

[9]Our reasoning and result hold the use of reliable documentary evidence as

BROWN, J. (dissenting). The defendant maintains on appeal that his probation revocation was not supported by reliable hearsay. I agree, and I therefore dissent. It is well established that when hearsay evidence is found reliable, it may be offered as evidence in a probation revocation proceeding. See *Commonwealth* v. *Durling*, 407 Mass. 108, 118 (1990). The evidence must "bear[] substantial indicia of reliability and [be] substantially trustworthy." *Ibid.* See *Commonwealth* v. *Negron*, 441 Mass. 685, 691 (2004).

In my view, it was error for the judge to rely solely on the police report and the victim's affidavit to revoke the defendant's probation. "Unsubstantiated and unreliable hearsay cannot, consistent with due process, be the entire basis of a probation revocation." *Commonwealth* v. *Durling, supra.* At the hearing, the judge had only the testimony of the probation officer, the victim's affidavit, the police report, and a notarized letter from the victim requesting that the defendant's probation not be revoked. The judge found the defendant in violation of his probation, based on the police report and the victim's affidavit. Both of those exhibits lacked sufficient and carefully tailored details to warrant a finding of assault and battery by means of a dangerous weapon, a shod foot. The only causal connection that the defendant used his foot was the victim's unsubstantiated assertion that she received stitches to her foot. Throughout the proceeding, the Commonwealth never connects or mentions the defendant's foot being used as a dangerous weapon. Compare *Commonwealth* v. *Nunez*, 446 Mass. 54, 59 (2006).

Additionally, all parties concede that the victim's affidavit, standing alone, is vague and thus unreliable. Compare *Commonwealth* v. *Patton*, 458 Mass. 119, 134 (2010). Even coupled with the police report, as the judge did here, the evidence is still insufficient. In *Commonwealth* v. *King*, 71 Mass. App. Ct. 737, 741 (2008), we reversed a probation revocation as the evidence presented was "[a] narrative [police] report merely relat[ing]

---

proof of ground for revocation to be permissible, not preferable. Revocation judges possess ample discretionary authority to require the presence of witnesses in instances in which they are not satisfied of the proposed good cause for their absence and in which they find documents insufficient in the absence of live testimony and cross-examination.

what the alleged victim told the officers." See *Commonwealth* v. *Ortiz*, 58 Mass. App. Ct. 904, 906 (2003) (reversal of probation revocation where evidence was merely officer's repetition of complainant's account and his personal observation of damage to vehicle). See also *Commonwealth* v. *Emmanuel E.*, 52 Mass. App. Ct. 451, 454 (2001).

Here, the police report only includes one sentence regarding Officer Williams's personal observation of the victim's bruises, the victim being transported to the hospital and being advised of her G. L. c. 209A rights, and the defendant's absence from the scene. The three additional statements merely recounted the victim's version of the incident. In sum, the police report in and of itself is insufficient.

Furthermore, the police report and the victim's affidavit do not align. Without the victim's appearance at the hearing, it is impossible to understand the sequence of events. Even if the judge had relied on the probation officer's testimony — the uncorroborated hearsay evidence — his testimony would not have provided any competent additional insight. See *Commonwealth* v. *Podoprigora*, 48 Mass. App. Ct. 136, 139 (1999). It is not enough to conclude that because there is some indication that a criminal act occurred, a probationer has violated probation. The crime charged must be reflected in the evidence relied upon. In this case, the judge's factual findings do not provide a sufficient basis for revoking the defendant's probation, see *Commonwealth* v. *Casanova*, 65 Mass. App. Ct. 750, 756 (2006), and I would reverse the order revoking probation.