COMMONWEALTH *vs.* RICHARD WILCOX.

Norfolk. December 8, 2005. - February 9, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Practice, Criminal,* Probation, Revocation of probation. *Due Process of Law,* Probation revocation. *Constitutional Law,* Confrontation of witnesses.

Discussion of probation and its purpose, the conditional liberty interests that probationers possess, and the limited constitutional protections available to probationers. [64-66]

This court concluded that neither the right of confrontation under the Sixth Amendment to the United States Constitution, as explicated in *Crawford* v. *Washington,* 541 U.S. 36 (2004) [66-68], nor the confrontation requirement of art. 12 of the Massachusetts Declaration of Rights [68-70] applied to probation revocation hearings.

COMPLAINT received and sworn to in the Wrentham Division of the District Court Department on August 17, 2000.

A proceeding for revocation of probation was heard by *Robert E. Baylor,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Thomas J. Iovieno* for the defendant.

*Michael J. Markoff,* Assistant District Attorney, for the Commonwealth.

COWIN, J. We consider whether the right of confrontation as explicated in *Crawford* v. *Washington,* 541 U.S. 36 (2004) (*Crawford*), applies to probation revocation hearings.[1] We decide that the *Crawford* case is inapplicable and that the standard

---

[1]The record reflects that the term of incarceration imposed as a result of revocation has expired, but we address the merits nonetheless because revoca-

articulated in *Commonwealth* v. *Durling*, 407 Mass. 108, 117-118 (1990), controls our resolution of this case.

*Facts.* In July, 2001, the defendant was convicted in the Wrentham Division of the District Court Department of four counts of making annoying or indecent telephone calls, G. L. c. 269, § 14A,[2] and two counts of accosting a person of the opposite sex, G. L. c. 272, § 53.[3] The charges arose from the defendant's random dialing of telephone numbers. When he reached young girls, he lured them into indecent conversation and asked them, among other things, to make pictures and videotape for him, presumably of themselves. The defendant was placed on probation for four three-month terms and two six-months terms, all to be served consecutively.[4] In addition to other conditions imposed, the defendant was ordered to have no "unsupervised contact with anyone under the age of 16," except his family. Court supervision was to continue until May 14, 2004.

Just after midnight on July 19, 2002, Officer Clayton Carter of the Pawtucket, Rhode Island, police department responded to a report of a suspicious man in a white sports car. His interviews with those involved revealed the following. The previous day, "the car" appeared to be following a young girl home from summer school. The girl was identified in the report as "K."

tion of probation may have collateral consequences beyond the term of incarceration, see *Blake* v. *Massachusetts Parole Bd.*, 369 Mass. 701, 704 (1976) (distinguishing revocation of probation, denial of parole, and denial of early eligibility for parole), and the administration of justice would benefit from resolution of confusion and uncertainty on these issues. See *Bradford* v. *Knights*, 427 Mass. 748, 750 (1998); *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943).

[2]General Laws c. 269, § 14A, states in pertinent part: "Whoever telephones another person . . . repeatedly, for the sole purpose of harassing, annoying or molesting such person or his family, whether or not conversation ensues, or whoever telephones a person repeatedly, and uses indecent or obscene language to such person, shall be punished by a fine of not more than five hundred dollars or by imprisonment for not more than three months, or both."

[3]General Laws c. 272, § 53, states in pertinent part, that "persons who with offensive and disorderly acts or language accost or annoy persons of the opposite sex . . . may be punished by imprisonment in a jail or house of correction for not more than six months, or by a fine of not more than two hundred dollars, or by both such fine and imprisonment."

[4]The probation terms and conditions were consecutive to a previous term imposed on other charges of which the defendant was also convicted.

Later that day, the man with the white car again leered at "K" inside a convenience store the girl was visiting with two friends, minors whom police identified as "J" and "B." The man followed "K" and her companions "home."[5] The children provided a detailed description of the man to the police officer.

Between 10 P.M. and midnight that evening, two women, one of whom was apparently the mother of some or all of the children, observed the "same vehicle," "circulating the neighborhood" while the women were sitting on "the front steps." The women described the vehicle as a white Mitsubishi Eclipse automobile bearing Massachusetts registration number 9929S. One of the women stated she told the driver, "Stop driving by here, you have been doing it all night." The man answered, "I'm looking for a friend, I'm sorry[,] I did not mean anything by it." The same woman reported that she informed the operator she would contact the police and the driver said, "I'm sorry, I'm sorry," and drove away.

Another Pawtucket police officer, Lance Trafford, traced the car to a Massachusetts company. A representative of the company confirmed ownership of the car and reported that it was being used by the defendant, who was an employee. The officer then contacted the defendant, who agreed to an interview.

During the interview, the defendant made damaging admissions. He recalled the children with whom the detective was concerned. He related that he "saw the girls when they left" apparently referring to the store, "looked at them" and "drove by them," but "didn't see what road" they took, and after losing track of them, "just drove around and around the block." Later, he appeared to admit to having followed the girls briefly after "checking them out." He said that was the first occasion on which he saw the girls. He also admitted that he had been chased away by a woman late that night. He assured the officer that he did not "intend to go near them again or be around there [again]."

The probation officer issued a notice of probation violation, in part for the defendant's "[u]nsupervised contact" with children under sixteen years of age.[6] A probation revocation

---

[5] It was unclear whether the girls lived at the same address.

[6] The record does not reveal how the probation officer learned of the violation.

hearing was held at the Wrentham District Court. The probation officer and Officer Trafford testified. Officer Trafford did not have personal knowledge of the ages of the girls or the events of July 18, and he relied on Officer Carter's police report for portions of his testimony. Neither "K," her companions, the two women, or Officer Carter testified. Relying in part on the hearsay statements in the police report, the judge found that the defendant had been in "contact" with persons under sixteen years of age, revoked probation, and imposed the suspended sentences.

The defendant sought a stay of execution of the sentences from a single justice of the Appeals Court. The single justice denied the stay, finding there was "a substantial basis for the revocation of probation." The defendant appealed from the revocation to the Appeals Court, which affirmed. See *Commonwealth* v. *Wilcox*, 63 Mass. App. Ct. 131 (2005). This court granted the defendant's application for further appellate review limited to the question whether *Crawford* v. *Washington, supra*, applies in probation violation hearings.

*Discussion.* Probation is a creature of statute, see G. L. c. 276, §§ 87, 87A; G. L. c. 279, §§ 1-3, with deep roots in the Commonwealth. See *Buckley* v. *Quincy Div. of the Dist. Court Dep't*, 395 Mass. 815, 817-818 n.2 (1985) (tracing history to Boston shoemaker who in 1841 began supplying to drunkards "bail and rudimentary counseling"). The purpose of probation rather than immediate execution of a term of imprisonment "in large part is to enable the [convicted] person to get on his feet, to become law abiding and to lead a useful and upright life under the fostering influence of the probation officer."[7] *Mariano* v. *Judge of Dist. Ct. of Cent. Berkshire*, 243 Mass. 90, 93 (1922).

A probationer has only a conditional liberty interest. See *Commonwealth* v. *Olsen*, 405 Mass. 491, 493 (1989); G. L. c. 279, § 3. He or she must comply with "such conditions" as the sentencing judge "deems proper," G. L. c. 276, § 87,

---

[7] Other courts have stated that probation is analogous to parole. See *Gagnon* v. *Scarpelli*, 411 U.S. 778, 782 & n.3 (1973). The systems are generally separate, however, and our previous cases distinguish them. See *Baxter* v. *Commonwealth*, 359 Mass. 175, 179-181 (1971).

regularly report to a probation officer or otherwise submit to court supervision, see *Commonwealth* v. *Taylor*, 428 Mass. 623, 626 (1999), and pay a monthly "probation fee," G. L. c. 276, § 87A. A breach of a condition of probation constitutes a violation. *Rubera* v. *Commonwealth*, 371 Mass. 177, 180-181 (1976). If the probation officer receives information tending to show that the probationer has breached, the officer may "surrender" the probationer to the court. *Commonwealth* v. *Durling*, *supra* at 111. Inherent in a court's power to grant probation is the power to revoke it. *Jake J.* v. *Commonwealth*, 433 Mass. 70, 77-78 (2000). The judge determines whether a violation in fact occurred and, in the court's discretion, whether the probationer's conduct warrants imposition of the original suspended sentence, see *Commonwealth* v. *Holmgren*, 421 Mass. 224, 226, 228 (1995); *Commonwealth* v. *McGovern*, 183 Mass. 238, 240-241 (1903), or in the case of straight probation, imposition of a sentence.[8]

The probation revocation proceeding is not a new criminal prosecution. See *Gagnon* v. *Scarpelli*, 411 U.S. 778, 782 (1973); *Commonwealth* v. *Olsen*, *supra*. The Commonwealth has already met its burden of proving beyond a reasonable doubt the person's guilt on the underlying crime. *Commonwealth* v. *Holmgren*, *supra* at 225-226. The probationer escaped total loss of liberty only as a result of the trial judge's exercise of discretion. *Commonwealth* v. *Durling*, 407 Mass. 108, 115 (1990).

It follows that, at a revocation proceeding, "a probationer need not be provided with the full panoply of constitutional protections applicable at a criminal trial." *Id.* at 112. The finding of a violation is not by a jury but by a judge, and is based only on a preponderance of the evidence, not proof beyond a reasonable doubt. See *Commonwealth* v. *Holmgren*, *supra* at 226; *Commonwealth* v. *McGovern*, *supra* at 240 (it is "question of fact for the court . . . to determine . . . whether the

---

[8]A defendant placed on straight probation does not receive a suspended sentence but is simply placed on probation for a certain term. Although not material here, the authority to suspend a sentence of incarceration in a State prison, as opposed to a house of correction, has been eliminated by G. L. c. 127, § 133, as appearing in St. 1993, c. 432, § 11 (Truth-in-Sentencing Act).

[defendant] had violated" probation). The probationer lacks an absolute right to make a closing argument. *Commonwealth* v. *Marvin*, 417 Mass. 291, 295 (1994). Jeopardy does not attach at a probation revocation hearing, *Krochta* v. *Commonwealth*, 429 Mass. 711, 713-714 (1999), and a violation may be found even if the defendant has been acquitted of the same conduct after a criminal trial, *Commonwealth* v. *Holmgren, supra* at 226-228. Decisions mandating suppression of evidence also do not apply, "where the police who unlawfully obtained the evidence neither knew nor had reason to know of the probationary status of the person whose property was seized." *Commonwealth* v. *Olsen, supra* at 491.

In recognition that the probationer does have some liberty interest at stake in a revocation hearing, due process rights enshrined in the Fourteenth Amendment to the United States Constitution provide to the probationer: written notice of the claimed violation of probation, disclosure of the evidence against him or her, the opportunity to be heard in person and present witnesses and evidence, confrontation and cross-examination of adverse witnesses (unless the hearing officer specifically finds that there is good cause for not allowing confrontation or the hearsay evidence is reliable), a "neutral and detached" hearing body, and a written statement of the evidence relied on and the reasons for revoking probation. *Morrissey* v. *Brewer*, 408 U.S. 471, 489 (1972) (parole). See *Gagnon* v. *Scarpelli, supra* at 786; *Commonwealth* v. *Negron*, 441 Mass. 685, 690-691 (2004); *Commonwealth* v. *Maggio*, 414 Mass. 193, 196 (1993); *Commonwealth* v. *Durling, supra* at 112-113; *Rubera* v. *Commonwealth, supra* at 179-180 n.2. A judge cannot revoke probation arbitrarily or without a reason. *McHoul* v. *Commonwealth*, 365 Mass. 465, 470 (1974). In Massachusetts, a probationer has the right to counsel. See *Commonwealth* v. *Faulkner*, 418 Mass. 352, 359-360 (1994), citing *Williams* v. *Commonwealth*, 350 Mass. 732, 736-737 (1966).[9]

The defendant contends that, in addition, a right of confronta-

---

[9]The right to counsel is based on the fact that a probation revocation hearing is a part of the sentencing process and we have held that a defendant has a right to counsel during sentencing. See *Commonwealth* v. *Faulkner*, 418 Mass. 352, 360 (1994).

tion defined by *Crawford* v. *Washington*, 541 U.S. 36 (2004), is among the rights to which he is entitled at a revocation proceeding. In essence, he argues that a right of confrontation under the Sixth Amendment to the United States Constitution[10] applies to probation revocation hearings; the confrontation requirement of art. 12 of the Massachusetts Declaration of Rights applies, and the contours of the provision are defined by *Crawford*; or the limited right of confrontation arising from concepts of due process embodied in the Fourteenth Amendment and art. 12 are defined by *Crawford*.[11,12]

All the circuit courts of the United States Court of Appeals that have considered whether, as a matter of Federal constitutional law, the rule of *Crawford* applies to probation revocation hearings and similar proceedings, have decided in the negative.[13] See *United States* v. *Rondeau*, 430 F.3d 44, 47-48 (1st Cir. 2005); *United States* v. *Hall*, 419 F.3d 980, 985 (9th Cir.), cert. denied, 126 S. Ct. 838 (2005); *United States* v. *Kirby*, 418 F.3d 621, 627-628 (6th Cir. 2005); *United States* v. *Aspinall*, 389 F.3d 332, 343 (2d Cir. 2004); *United States* v. *Martin*, 382 F.3d 840, 844 (8th Cir. 2004).[14] See also *Ash* v. *Reilly*, 431 F.3d 826,

---

[10]The Sixth Amendment to the United States Constitution states in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."

[11]Article 12 states in pertinent part:

> "No subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him . . . . And every subject shall have a right . . . to meet the witnesses against him face to face . . . . And no subject shall be arrested . . . put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land."

[12]We decline to address the additional arguments that are outside the limited scope of our grant of review.

[13]Several cases addressed the issue in the context of revocation of supervised release, see 18 U.S.C. § 3583 (e)(3) (2000). "Parole, probation, and supervised release revocation hearings are constitutionally indistinguishable [for purposes of Federal law] and are analyzed in the same manner." *United States* v. *Hall*, 419 F.3d 980, 985 n.4 (9th Cir.), cert. denied, 126 S. Ct. 838 (2005).

[14]The United States Court of Appeals for the Eleventh Circuit reached the

829-830 (D.C. Cir. 2005) (parole).[15] These courts have all reasoned that the *Crawford* case interpreted only the Sixth Amendment, which by its terms applies solely to "criminal prosecutions," and that the right of confrontation ends on the determination of guilt and does not apply at sentencing.[16] See *Commonwealth* v. *Nunez, ante* 54, 58 (2006); *United States* v. *Cantellano,* 430 F.3d 1142, 1146 (11th Cir. 2005); *United States* v. *Luciano,* 414 F.3d 174, 178-179 (1st Cir. 2005). Since a subsequent probation surrender proceeding is not a stage of a "criminal prosecution," *Commonwealth* v. *Durling, supra* at 112, citing *Gagnon* v. *Scarpelli, supra* at 782, evidence is admissible at revocation proceedings "that would not be admissible in an adversary criminal trial." *Morrissey* v. *Brewer, supra* at 489. See *Gagnon* v. *Scarpelli, supra* at 782 n.3.

The defendant's next argument concerns art. 12 of the Massachusetts Declaration of Rights. That article provides an "equivalent" right of confrontation, *Commonwealth* v. *Childs,* 413 Mass. 252, 260 (1992), applicable where a person is "held to answer for any crimes or offence." The Declaration of Rights does not define "offence." The term is used in other portions of the document to encompass crimes generally. See Part II, c. 1, § 3, art. 11; Part II, c. 2, § 1, art. 8. Contemporary dictionaries defined the term somewhat more comprehensively than the word "crimes,"[17] a view endorsed in *Opinion of the Justices,* 301 Mass. 615, 620 (1938). But we have never directly

same conclusion in United States *vs.* Morris, U.S. Ct. App. No. 04-16186 (11th Cir. July 11, 2005). The unpublished decision in United States *vs.* Jarvis, U.S. Ct. App. No. 03-30388 (9th Cir. Mar. 15, 2004), a case in which there was no oral argument, stated without any discussion that confrontation could be withheld for good cause, and included a secondary reference to the *Crawford* decision.

[15]After oral argument, the United States Court of Appeals for the District of Columbia Circuit vacated a decision relied on by the defendant, *Ash* v. *Reilly,* 354 F. Supp. 2d 1 (D.D.C. 2004), vacated, 431 F.3d 826 (D.C. Cir. 2005).

[16]Sixth Amendment rights, such as the right to counsel, do not end when there has been a conviction. See *Mempa* v. *Rhay,* 389 U.S. 128, 137 (1967) (defendant entitled to attorney in deferred sentencing proceeding). Assistance of counsel is necessary to ensure a defendant may participate intelligently in the proceeding. See *id.* at 134. See also *Commonwealth* v. *Faulkner, supra* at 360; note 9, *supra.* Cf. *Gagnon* v. *Scarpelli,* 411 U.S. 778, 781 (1973) (limiting *Mempa* reasoning to cases where defendant probationer was not previously sentenced).

[17]The term "offence" or "offense" was variously defined as follows: "[A]n

answered the question reserved in *Attorney Gen.* v. *Pelletier*, 240 Mass. 264, 303 (1922), whether "the word 'offence' is used in our Constitution in a sense broad enough to include some matters not strictly criminal."

A subsequent decision provides useful guidance. Violation of prison rules by inmates subject to prison supervision is not considered an offense for art. 12 purposes, in part because the "need for fairness in disciplinary proceedings must be accommodated to the interest of maintaining prison security." *Murphy* v. *Superintendent, Mass. Correctional Inst., Cedar Junction*, 396 Mass. 830, 832 (1986).

A court may likewise summarily, and without confrontation, incarcerate a person pursuant to certain powers inherent in the courts. See art. 30 of the Massachusetts Declaration of Rights; *Opinion of the Justices*, 279 Mass. 607, 609 (1932) (each department of government "supreme in its respective field"). A judge has the inherent power to grant pretrial bail and compel the presence of a defendant at trial, and thus may deny or revoke bail summarily, thereby placing the defendant in custody without a "full-blown evidentiary hearing" involving the confrontation of witnesses. *Commonwealth* v. *Paquette*, 440 Mass. 121, 128, 133 (2003), cert. denied, 540 U.S. 1150 (2004) (bail revoked). *Querubin* v. *Commonwealth*, 440 Mass. 108, 114-115, 118 (2003) (bail denied). Similarly, a judge has inherent authority to maintain the dignity necessary to execute judicial powers and preserve the authority of the court. See *Dolan* v. *Commonwealth*, 304 Mass. 325, 340-341 (1939), quoting *Cartwright's Case*, 114 Mass. 230, 238 (1873). Thus, art. 12's analogous jury trial provision does not diminish a judge's power to punish sum-

---

offence is an act prohibited, or (what comes to the same thing) an act of which the contrary is commanded by law." Bentham Princ. Legisl. xix, § 1 (1780), quoted in 7 (Part 1) New American Dictionary at 76 (1st ed. 1909). "[A]n act committed against a law or ommitted [*sic*] where the law requires it, and punishable by it. . . . And all offences are capital, or not so; capital, for those which the offender shall lose his life: and not capital, where any offender may forfeit his lands and goods, be fined or suffer corporal punishment, or both; but not loss of life." 2 Cunningham's Law Dictionary (or New and Complete Law Dictionary) (1783). Jacob's Law Dictionary (also Law Dictionary) (1797) (same).

marily a criminal contempt by incarceration, see *Dolan* v. *Commonwealth, supra,* although other sources of authority now constrain a judge's discretion in such matters.[18]

In the present case, the defendant was subject to the supervision and authority of the court, which had the inherent authority to revoke his probation. See *Jake J.* v. *Commonwealth, supra* at 78. We conclude, in accordance with these decisions, that art. 12 presents no impediment to summary procedure, and does not assure the probationer an absolute and inflexible right to confront the witnesses against him as described in the *Crawford* case.

Of course, concepts of due process embodied in the Fourteenth Amendment, see *Gagnon* v. *Scarpelli, supra* at 786, and art. 12, see *Commonwealth* v. *Milton,* 427 Mass. 18, 22 (1998), do apply and give rise to the broader but more flexible right of confrontation described in *Commonwealth* v. *Durling, supra* at 117-119.[19] This due process right is less stringent than the right of confrontation in criminal prosecutions for several reasons. As discussed above, a probationer's liberty interest is not absolute. *Id.* at 115. At the time of the revocation hearing, the Commonwealth "has already gone through the expense and effort of convicting" the defendant and it "has a strong interest in being able to revoke probation in appropriate cases without having to repeat its effort." *Id.* at 116. In addition, unlike criminal prosecutions, probation revocation proceedings may be conducted in a location distant from the place of the violation, even, as here, in another State. Cf. art. 13 of the Massachusetts Declaration of

---

[18]The use of summary power in contempt proceedings has been limited by rule and Federal law. See Mass. R. Crim. P. 43, 378 Mass. 919 (1978); Mass. R. Crim. P. 44, 378 Mass. 920 (1979). See also *Codispoti* v. *Pennsylvania,* 418 U.S. 506, 511-513, 517 (1974), citing *Bloom* v. *Illinois,* 391 U.S. 194, 211 (1968) (Federal Constitution guarantees right to jury trial for charge of criminal contempt where more than six months incarceration imposed).

[19]Those subject to "supervised release" in the Federal courts are similarly entitled, at a revocation hearing, to "question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1 (b) (2) (C) (2005). A Federal court balances the "releasee's right to confront witnesses with the government's good cause for denying confrontation." *United States* v. *Rondeau,* 430 F.3d 44, 48 (1st Cir. 2005).

Rights (vicinity requirement)[20]; *Commonwealth* v. *Brogan*, 415 Mass. 169, 173-174 (1993) (criminal contempt may be prosecuted in court whose order was violated when such court situated near locus of acts alleged).

As a result, we are satisfied that due process is not offended by admission in a probation revocation hearing of hearsay evidence that a judge determines to be "substantially reliable," or for which "good cause" is otherwise shown. *Commonwealth* v. *Durling, supra* at 117-119. See *Commonwealth* v. *Negron*, 441 Mass. 685, 691 (2004).

The order of the District Court judge revoking probation is affirmed.

*So ordered.*

---

[20]Article 13 of the Massachusetts Declaration of Rights states: "In criminal prosecutions, the verification of facts in the vicinity where they happen, is one of the greatest securities of the life, liberty, and property of the citizen."