NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13505

COMMONWEALTH  vs.  SAJID S., a juvenile.


Suffolk.     March 4, 2024. – July 9, 2024.

Present:  Budd, C.J., Kafker, Wendlandt, Georges, & Dewar, JJ.


Constitutional Law, Sentence, Cruel and unusual punishment.
     Practice, Criminal, Sentence, Probation.  Juvenile Court,
     Probation.



     Indictments found and returned in the Suffolk County
Division of the Juvenile Court Department on December 30, 2004.

     A motion for relief from unlawful restraint, filed on March
21, 2023, was heard by Peter M. Coyne, J.

     The Supreme Judicial Court granted an application for
direct appellate review.


     Matthew J. Koes for the juvenile.
     Kenneth E. Steinfield, Assistant District Attorney, for the
Commonwealth.
     Eva G. Jellison & Danya F. Fullerton, for youth advocacy
division of the Committee for Public Counsel Services, amicus
curiae, submitted a brief.


     WENDLANDT, J.  When it comes to sentencing, as we have

repeatedly and recently stated, young persons are

constitutionally different.  See Commonwealth v. Mattis, 493 Mass. 216, 238 (2024).  In this case, we consider whether the proscription against "cruel or unusual" punishments embodied in art. 26 of the Massachusetts Declaration of Rights prohibits the sentence imposed on the juvenile,[1] who in November 2004, as a sixteen year old, stalked and robbed one victim at gunpoint before repeatedly raping her in her home, and then bound, gagged, and robbed a second victim -- the first victim's roommate -- when she arrived home.  He was sentenced to a period of incarceration in State prison for his convictions of, inter alia, aggravated rape -- a period compliant with art. 26's requirement that, in the absence of extraordinary circumstances, the period of parole ineligible incarceration for a juvenile convicted of nonhomicide offenses not exceed that of a juvenile convicted of murder.  See Commonwealth v. Perez, 477 Mass. 677, 686 (2017) (Perez I), S.C., 480 Mass. 562 (2018) (Perez II).  He was further given a five-year period of straight probation for the remaining nonhomicide offenses to commence from and after his release.

Because, as an adult of more than thirty years of age, he allegedly violated the conditions of probation, and because, as

---

[1] Although the juvenile is now an adult, we refer to him as the juvenile for consistency.

a result of the violation, he both was held on a probation detainer and faces a potential sentence that might include a period of incarceration on the remaining nonhomicide offenses he committed as a juvenile, the now-grown juvenile contends that art. 26's proscription of cruel or unusual punishments was violated.  We conclude that imposing probation as part of such an integrated sentencing structure does not run afoul of art. 26's safeguards peculiar to juveniles.  Further concluding that suffering the consequences of a violation of probation also is constitutional, we affirm the order of the Juvenile Court judge denying the juvenile's second motion for relief from unlawful restraint.[2]

1.  Background.  a.  Facts.[3]  On an evening in November 2004, the juvenile, then sixteen years old, followed the victim home, ambushed her outside of her apartment, and, at gunpoint, demanded that she give him money.  The juvenile then forced the victim into her apartment and repeatedly raped her. He also bound and gagged her.

---

[2] We acknowledge the amicus brief submitted by the youth advocacy division of the Committee for Public Counsel Services.

[3] The juvenile tendered a plea and admitted to sufficient facts to warrant findings on the offenses discussed infra.

The second victim, the victim's roommate, came home, and the juvenile bound and gagged her as well. The juvenile stole property from both victims and fled.

b. <u>Prior proceedings</u>. In March 2007, the juvenile tendered a plea admitting to sufficient facts and was adjudicated as a youthful offender on one count of home invasion, G. L. c. 265, § 18C; three counts of aggravated rape, G. L. c. 265, § 22 (<u>a</u>); two counts of armed robbery, G. L. c. 265, § 17; two counts of kidnapping, G. L. c. 265, § 26; two counts of assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (<u>b</u>); one count of using a firearm in a felony, G. L. c. 265, § 18B; and one count of carrying a firearm without a license, G. L. c. 269, § 10 (<u>a</u>). He was sentenced to from sixteen to twenty years in State prison for the aggravated rape charges;[4] two and one-half to three years in State prison for carrying a firearm without a license, to be served concurrently with the aggravated rape sentence; and ten years of probation for the remaining charges, to be served from and after his release from State prison.

---

[4] The juvenile was given credit for 838 days of time served awaiting trial.

In November 2020, after sixteen years of incarceration, the juvenile became eligible for parole. However, the parole board denied each of his two applications for parole.

i. First Perez I motion. In July 2021, following this court's decision in Perez I, the juvenile filed a motion for release from unlawful restraint pursuant to Mass. R. Crim. P. 30 (a), as appearing in 435 Mass. 1501 (2001), contending that his original sentence violated art. 26 because it required him to serve a period of incarceration during which he was not eligible for parole (sixteen years) that exceeded the then-applicable fifteen-year parole ineligibility period of a juvenile convicted of murder.[5] The Commonwealth did not dispute

_____

[5] Importantly, a juvenile convicted of murder in 2007 -- the same year that the juvenile tendered his plea -- became eligible for parole after fifteen years of incarceration. See G. L. c. 127, § 133A, as amended through St. 2000, c. 159, § 230 ("Every prisoner who is serving a sentence for life in a correctional institution of the commonwealth . . . shall be eligible for parole . . . within sixty days before the expiration of fifteen years of such sentence"); Commonwealth v. Brown, 466 Mass. 676, 678 (2013) (juvenile convicted of murder "may only be sentenced to the lesser punishment under G. L. c. 265, § 2, of mandatory life in prison with the possibility of parole set pursuant to the parole eligibility statute in effect at the time of [his] crime, G. L. c. 127, § 133A, as amended through St. 2000, c. 159, § 230, providing for parole eligibility in fifteen years").

Thereafter, the Legislature amended G. L. c. 127, § 133A. As amended, it provides that every prisoner serving a life sentence "shall be eligible for parole at the expiration of the minimum term fixed by the court under [G. L. c. 279, § 24]." G. L. c. 127, § 133A, as amended through St. 2018, c. 69, § 98. General Laws c. 279, § 24, in turn, sets parole eligibility

the juvenile's contention and chose to forgo a <u>Miller</u> hearing,[6] discussed <u>infra</u>, to attempt to show that extraordinary circumstances warranted treating the juvenile more harshly for parole purposes than a juvenile convicted of murder.  The motion was allowed, and the original sentence was vacated.

Finding that the juvenile's behavior had improved over time, that he accepted responsibility for his crimes, and that he "availed himself [of the] social and educational opportunities" provided to him while incarcerated, the motion judge rejected the Commonwealth's proposal regarding resentencing.[7]  Instead, he adopted the juvenile's proposal regarding resentencing.  Specifically, the judge resentenced the juvenile to from fifteen years to fifteen years and one day for the aggravated rape offenses; two and one-half to three years for the offense of carrying a firearm without a license, to be served concurrently with the sentence for the aggravated rape

---

between twenty and thirty years for juveniles convicted of murder in the first degree; between twenty-five and thirty years if the murder was committed with deliberate premeditation; and at thirty years if the murder was committed with extreme atrocity or cruelty.  G. L. c. 279, § 24, as amended through St. 2014, c. 189, § 6.  These amended periods do not apply to our analysis in the present case.

[6] See <u>Miller</u> v. <u>Alabama</u>, 567 U.S. 460 (2012).

[7] The Commonwealth had proposed a resentencing structure as follows:  fifteen to twenty years in State prison (with parole-eligibility beginning at fifteen years) and ten years of probation from and after his release for the remaining offenses.

offenses; and five years of probation for the remaining offenses, to be served from and after the commitment to State prison, beginning on the date of the juvenile's release (restructured sentence).

As discussed infra, the restructured sentence thus conformed to the constitutional requirement that, in the absence of extraordinary circumstances, the juvenile's period of parole ineligibility not exceed that of a juvenile convicted of murder. See Perez I, 477 Mass. at 686.  But it potentially exposed the juvenile to further incarceration should he violate the conditions of probation.

Because he had already served the incarcerated portion of the restructured sentence, one day after the resentencing, in January 2022, the juvenile was discharged from the Department of Correction.  He returned to court the following day, had a colloquy with the judge about his probation conditions, and signed a conditions of probation form.

ii.  Second Perez I motion.  Less than seven months after his release, in August 2022, the juvenile, now a thirty-three year old adult, was charged with multiple firearm and drug offenses, resisting arrest, unarmed burglary, and unlicensed and uninsured operation of a motor vehicle.  The juvenile was alleged to have violated his probation "as a result of [the] new

arrest."  A notice of violation of probation was issued, and the juvenile was arrested and held on a probation detainer.

The juvenile filed a second motion for relief from unlawful restraint pursuant to Mass. R. Crim. P. 30 (a), and a corresponding motion for release from the probation detainer pending a decision on the second motion for relief.[8]  Both motions were denied, and the juvenile appealed from the denial of his second motion for relief from unlawful restraint.  We granted the juvenile's application for direct appellate review.

2.  Discussion.  a.  Standard of review.  We review the juvenile's constitutional challenge to his restructured sentence de novo, accepting the motion judge's findings of fact absent a showing of clear error.  See Commonwealth v. DiBenedetto, 491 Mass. 390, 396 (2023).

---

[8] Also in August 2022, the juvenile was held as a dangerous person pursuant to G. L. c. 276, § 58A (Section 58A), in connection with the criminal matter that formed the basis for his probation detainer.  In January 2023, however, the juvenile was no longer being held pursuant to Section 58A and was released on personal recognizance, but continued to be held on the probation detainer.  Thus, when the juvenile filed his second motion for relief in March 2023, he was being held solely on his probation detainer.

In May 2023, the juvenile was arraigned in the Superior Court for his conduct pertaining to the August 2022 arrest and held pending a dangerousness hearing pursuant to Section 58A. The Superior Court allowed the Commonwealth's Section 58A motion on May 11, 2023, and the juvenile was held pursuant to Section 58A until January 24, 2024.  As of February 2024, the juvenile was being held pursuant to the probation detainer.

b.  _Constitutional framework_.  We need not belabor the constitutional framework that guides the punishments that may be imposed on young persons; these principles have been repeatedly and recently set forth.  See, e.g., _Miller_ v. _Alabama_, 567 U.S. 460, 469-470 (2012) (Eighth Amendment to United States Constitution prohibits mandatory imposition of life without parole for juveniles who commit murder); _Graham_ v. _Florida_, 560 U.S. 48, 78-79 (2010) (Eighth Amendment prohibits imposition of life without parole for juveniles who commit nonhomicide offenses); _Roper_ v. _Simmons_, 543 U.S. 551, 568-570 (2005) (Eighth Amendment prohibits imposition of death penalty for children);[9] _Mattis_, 493 Mass. at 217-218, 224 (due to contemporary standards of decency, art. 26 prohibits imposition of life without parole for persons aged eighteen, nineteen, and twenty where they share same attributes of youth relevant to sentencing as juveniles); _Diatchenko_ v. _District Attorney for the Suffolk Dist._, 466 Mass. 655, 668, 671 (2013) (_Diatchenko I_), S.C., 471 Mass. 12 (2015) (_Diatchenko II_) (art. 26 prohibits

---

[9] We have interpreted art. 26 "more broadly than the [United States] Supreme Court has interpreted the Eighth Amendment." _Perez I_, 477 Mass. at 679.  See _Diatchenko_ v. _District Attorney for the Suffolk Dist._, 466 Mass. 655, 668 (2013), S.C., 471 Mass. 12 (2015) ("We often afford criminal defendants greater protections under the Massachusetts Declaration of Rights than are available under corresponding provisions of the Federal Constitution").

imposition of life without parole for juveniles who commit murder, even on discretionary basis).

For present purposes it suffices briefly to recount the guiding principle underlying our jurisprudence -- namely, that, in light of the "evolving standards of decency that mark the progress of a maturing society," Mattis, 493 Mass. at 224, quoting Commonwealth v. Okoro, 471 Mass. 51, 61 (2015), sentencing of young persons must be informed by the attributes that define this early period of life.  These attributes are well known to parents and confirmed by the developing neuroscience of the brain.  In particular, this cohort generally lacks maturity and has an underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking.  See Roper, 543 U.S. at 561, 569-570. Young persons are more vulnerable to negative influences and outside pressures, including from family and peers; yet they lack the wherewithal to change their environment.  Id. at 569. Moreover, at this early stage in life, their character is not well formed and their traits are less fixed than their elders. Id. at 570.  These attributes of youth stem from the brain's development.  See Miller, 567 U.S. at 471-472; Graham, 560 U.S. at 68; Roper, supra.  And while these neurological developmental markers are common to the cohort of young persons, neither the markers nor the correlating attributes generally are fixed.

Children will, as children must, "grow up." Accordingly, although they are capable of committing grave crimes, when it comes to meting out punishments, our societal norms that inform the scope of art. 26's protections require that their "diminished culpability and greater prospects for reform" be considered. Miller, supra at 471.

The Commonwealth cannot, consistent with art. 26's prohibition against cruel or unusual punishments, simply lock children up and throw away the key, even when they commit murder. Condemning a child to die in prison involves a determination that the crime committed evinces an irretrievably depraved character -- a determination that a sentencing judge simply cannot make "with integrity" in view of the malleability of character that defines young persons. Diatchenko I, 466 Mass. at 670. See Mattis, 493 Mass. at 241 (Kafker, J., concurring). Indeed, "[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." Graham, 560 U.S. at 73, quoting Roper, 543 U.S. at 572.

Instead, to pass constitutional muster, a sentence cannot "improperly den[y] the juvenile offender a chance to demonstrate growth and maturity." Graham, 560 U.S. at 73. This means that

for young persons who commit murder, the Constitution requires that they be given a "meaningful opportunity to obtain release [through parole] based on demonstrated maturity and rehabilitation."  Diatchenko I, 466 Mass. at 674, quoting Graham, supra at 75.  Thus, life with the possibility of parole is constitutional for a juvenile offender, but life without that possibility is not.  See Diatchenko I, supra at 671 ("The unconstitutionality of this punishment arises not from the imposition of a sentence of life in prison, but from the absolute denial of any possibility of parole").

After a period of incarceration -- a period set by the Legislature to comprise fifteen or more years, during which the youth has had the benefit of time to mature, and his character is more well formed and his traits more fixed[10] -- informed determinations as to his capacity for reform can be made and the penological justifications for continued incarceration can be weighed.  See Graham, 560 U.S. at 71-74 (detailing the four penological justifications for punishment -- retribution, deterrence, incapacitation, and rehabilitation -- and inaptness of each in view of juvenile's youthful attributes).  Article 26 requires this meaningful "second look" at the merits of parole for the now-grown individual.

---

[10] See note 5, supra.

Importantly, art. 26 does not preclude the juvenile offender who commits murder from serving a life sentence, and it does not mandate that juveniles be granted parole; such persons, although young, have committed a grave crime.  See Diatchenko II, 471 Mass. at 29-30 ("the art. 26 right of a juvenile . . . offender in relation to parole . . . is not a guarantee of eventual release"); Diatchenko I, 466 Mass. at 674 ("Our decision should not be construed to suggest that individuals who are under the age of eighteen when they committed murder in the first degree necessarily should be paroled once they have served a statutorily designated portion of their sentence").  See also Graham, 560 U.S. at 82 ("A State need not guarantee the offender eventual release, but . . . must provide him or her with some realistic opportunity to obtain release").

Instead, the constitutional requirement is that judgments as to the aptness of continued incarceration be made during a subsequent reassessment of the individual, when he has had time to develop and to outgrow the impetuousness inherent in youth. This meaningful second look gives the youth the chance to show that he has matured and outgrown the behaviors that led to his incarceration.  Perforce, however, if parole is awarded and the individual violates a material condition of parole, he may be reincarcerated, having demonstrated, through the violation, a lack of rehabilitation.  See Commonwealth v. Cole, 468 Mass.

294, 299 (2014) ("Where the parole board finds a violation of a parole condition, the board 'may revoke a permit to be at liberty,' G. L. c. 127, § 148, and order the parolee to be returned to prison or jail").  In short, it is not cruel or unusual punishment to reincarcerate an individual who has shown an inability to comply with the conditions of parole.

Because the Constitution also mandates proportional punishments,[11] the constitutional constraints on punishing young persons who commit murder have implications for those who commit nonhomicide offenses, like the juvenile in the present case.[12]

---

[11] A tripartite test governs our analysis of whether any term of years sentence violates art. 26's proportionality requirement.  See Cepulonis v. Commonwealth, 384 Mass. 495, 497-499 (1981).

> "To determine whether a sentence is disproportionate requires (1) an inquiry into the nature of the offense and the offender in light of the degree of harm to society, (2) a comparison between the sentence imposed here and punishments prescribed for the commission of more serious crimes in the Commonwealth, and (3) a comparison of the challenged penalty with the penalties prescribed for the same offense in other jurisdictions" (quotations and citation omitted).

Commonwealth v. Sharma, 488 Mass. 85, 89, 90 (2021) (remanding consecutive homicide and nonhomicide sentences imposed upon juvenile offender "for a fact-intensive proportionality analysis under [tripartite test]").

[12] Although the now-grown juvenile is alleged to have violated the conditions of probation as an adult, the constitutional principles underlying the punishment of juveniles are relevant to our inquiry because the sentence being challenged is the sentence for the nonhomicide crimes he committed when he was a juvenile.

See Perez I, 477 Mass. at 679. Thus, where a juvenile is sentenced for a nonhomicide offense or offenses, the aggregate time to be served prior to parole eligibility cannot exceed the period applicable to a juvenile convicted of murder unless the sentencing judge finds that extraordinary circumstances warrant a harsher treatment for parole purposes than a juvenile convicted of murder.[13] See id. at 686. In order to show the extraordinary circumstances warranting a longer period of parole ineligibility, "the Commonwealth must prove that there is no reasonable possibility of the juvenile's being rehabilitated within the time after which a juvenile convicted of murder becomes eligible for parole." Perez II, 480 Mass. at 571. In short, for juveniles who commit a nonhomicide offense or offenses, a second look generally also is warranted, and it must occur, at the latest, on the same timetable as required for juveniles who commit murder.

---

[13] At such a hearing, the judge must consider the so-called Miller factors. These include:

> "(1) the particular attributes of the juvenile, including 'immaturity, impetuosity, and failure to appreciate risks and consequences'; (2) 'the family and home environment that surrounds [the juvenile] from which he cannot usually extricate himself'; and (3) 'the circumstances of the . . . offense, including the extent of [the juvenile's] participation in the conduct and the way familial and peer pressures may have affected him.'"

Perez I, 477 Mass. at 686, quoting Miller, 567 U.S. at 477.

As with juveniles who commit murder, however, juveniles who commit nonhomicide offenses are not entitled to parole; the constitutional mandate is only that they be given a meaningful opportunity to obtain it. See Perez II, 480 Mass. at 573 (although years of parole ineligible time "presumably provided the defendant with the opportunity to demonstrate his own capacity for redemption and rehabilitation[,] . . . the parole board retains the power to allow or deny parole in the exercise of its own judgment"). And, if granted the grace of parole, a juvenile convicted of nonmurder offenses who violates a condition of parole -- like the juvenile convicted of murder who violates a parole condition -- may be held for further periods of incarceration. See Cole, 468 Mass. at 299.

c. Probation and Perez I. In light of these constitutional principles, we consider whether the juvenile's restructured sentence is constitutional. Under its terms, the juvenile was sentenced to from fifteen years to fifteen years and one day in State prison -- a period during which he was not eligible for parole and which mirrored the then-applicable period of parole ineligibility of a juvenile convicted of murder -- for the aggravated rape convictions.[14] This portion of his

---

[14] The juvenile was also sentenced to from two and one-half to three years in State prison for the offense of possession of a firearm without a license, to be served concurrently with the aggravated rape offenses.

sentence thus complied with the requirements of art. 26 as explained in Perez I.  Indeed, the juvenile does not suggest otherwise.

His constitutional claim rests on the five years of probation, which he was given for his remaining nonhomicide offenses, and which began from and after the end of his State prison sentence.  The juvenile contends that this part of his restructured sentence violates the "rule[]" from Perez I because, when adding the potential term of incarceration stemming from his probation violation to the fifteen-year incarceration on his other offenses (including any time he might be held on a probation detainer for any such probation violation), his total parole-ineligible incarceration time might exceed the fifteen years of parole-ineligible time for a juvenile who committed murder.  In order to expose him to this potential additional time of incarceration, the juvenile argues, the Commonwealth was required at the resentencing hearing to prove that, in light of the Miller factors, see note 14, supra, extraordinary circumstances would justify imposing a (potentially) longer period of incarceration prior to parole eligibility than that applicable to a juvenile offender who committed murder.  The argument rests on a misapprehension of our holding in Perez I.

To begin, in Perez I, the court addressed only the parole eligibility date fixed according to the aggregate term of incarceration imposed at the time of sentencing.[15]  See Commonwealth v. Lutskov, 480 Mass. 575, 584 n.7 (2018) ("Perez I . . . focuses on the parole eligibility date at the time of sentencing"); Perez I, 477 Mass. at 683 ("Our specific inquiry here is whether the requirement of proportionality bars the imposition, on a juvenile defendant, of consecutive sentences for nonmurder offenses with a resulting parole eligibility date that exceeds that applicable to juveniles convicted of murder" [emphasis added]).  The court did not consider any potential further period of incarceration resulting from a future hypothetical probation violation.  Here, at the time of resentencing, the juvenile's restructured sentence imposed an "aggregate" fifteen-year term of incarceration,[16] which was equal

_____

[15] "[A]ggregation" or the "aggregation rule" refers to the process by which a parole eligibility date is calculated when an offender receives consecutive prison sentences.  Sharma, 488 Mass. at 87, quoting Dinkins v. Massachusetts Parole Bd., 486 Mass. 605, 609 (2021).  In these instances, an offender's "parole eligibility date is calculated by aggregating the minimum parole eligibility dates for each component sentence and using the latest date as the parole eligibility date."  Sharma, supra, quoting Dinkins, supra.  See, e.g., Perez I, 477 Mass. at 678 (defendant sentenced to "multiple concurrent and consecutive terms, resulting in an aggregate sentence of thirty-two and one-half years").

[16] The restructured sentence did not include consecutive prison terms.  See note 15, supra.

to the period of parole ineligibility for a juvenile convicted of murder.  Thus, the sentence imposed at the time of resentencing complied with our conclusion in Perez I.

To be sure, because of the probationary term given on the remaining nonhomicide offenses, at the time of resentencing there existed the potential for a further period of incarceration if the juvenile violated a condition of probation after his release from State prison.  Contrary to the juvenile's claim, however, the probationary term was consistent with the requirements of art. 26 as applied to juvenile offenders.  Far from locking him up and throwing away the key, the probationary term provided the juvenile with an opportunity even more generous than the constitutionally required "second look" at a time when he had matured.

"Probation, whether 'straight' or coupled with a suspended sentence, is a legal disposition which allows a criminal offender to remain in the community subject to certain conditions . . . ."[17]  Commonwealth v. Durling, 407 Mass. 108,

---

[17] A convicted person on probation generally is subject to several conditions; when a violation is alleged, as occurred here, the probation officer "surrenders" the convicted person to the court, subjecting the person to possible revocation of probation.  Commonwealth v. Durling, 407 Mass. 108, 111 (1990).  At the revocation hearing, the judge must determine, as a factual matter, whether the convicted person has violated the conditions of probation.  Id.  If the judge determines that there has been a violation, the judge can either revoke the probation and sentence of the convicted person or, if

111 (1990). "The purpose of probation . . . 'in large part is to enable the [convicted] person to get on his feet, to become law abiding and to lead a useful and upright life under the fostering influence of the probation officer.'" Commonwealth v. Rainey, 491 Mass. 632, 637 (2023), quoting Commonwealth v. Wilcox, 446 Mass. 61, 64 (2006). See Commonwealth v. Roderick, 490 Mass. 669, 681 (2022) ("probation long has been considered an act of grace more than an act of retribution, a means of protecting the public while sparing the probationer from incarceration" [quotation and citation omitted]); Commonwealth v. Feliz, 481 Mass. 689, 707 (2019), S.C., 486 Mass. 510 (2020) (distinct goal of probation is "[r]ehabilitation of the probationer").

In sum, the juvenile here was given more than the second look required by art. 26, which provides juvenile offenders only with an opportunity, albeit a meaningful opportunity, to reassess the continued merits of incarceration but is no guarantee that the juvenile actually will be released into the community. By contrast, the probation term imposed on the juvenile here allowed him actually to be released from continued incarceration subject to conditions. See note 18, supra.

---

appropriate, modify the terms of probation. Id. "How best to deal with the probationer is within the judge's discretion." Id.

Similarly, the fact that the now-grown juvenile violated the conditions of his probation does not transform the otherwise constitutional sentence into an unconstitutional one.  Like a juvenile offender who is granted parole, violates the terms thereof, and has his parole revoked, the juvenile here may face a further term of incarceration as a result of probation violation and revocation; nothing in art. 26 requires otherwise.  Compare Cole, 468 Mass. at 309 ("When a parolee violates a condition of parole, the parole board has the authority to revoke the parole and return the parolee to prison or jail for the balance of the committed sentence"), with Commonwealth v. Goodwin, 458 Mass. 11, 15 (2010) ("If a defendant violates one or more conditions of probation, a judge may revoke his probation and sentence him to a term of imprisonment for his underlying conviction").[18]

---

[18] While probation and parole are "generally separate" systems, Wilcox, 446 Mass. at 64 n.7, the two are often analogized and treated interchangeably.  See, e.g., Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (right to hearing for parolees extends to probationers because no "difference relevant to the guarantee of due process [exists] between the revocation of parole and the revocation of probation"); Durling, 407 Mass. at 113 (listing six due process requirements that apply to both probation and parole revocation proceedings).  But see Commonwealth v. Moore, 473 Mass. 481, 485-486 (2016) ("parolees have an expectation of privacy that is diminished beyond that of probationers because parole is more akin to imprisonment than probation is" [quotation and citation omitted]).

Of course, if, in connection with the probation revocation process, the judge finds that the juvenile has violated probation, further determines that probation should be revoked, and resentences the juvenile on the remaining nonhomicide offenses, the judge must do so within the constraints of, inter alia, the Eighth Amendment[19] and art. 26.[20]

Pertinently, because the juvenile has already served a term of incarceration for the other nonhomicide offenses stemming from the same crime spree -- a fifteen-year period, equal to the period of parole ineligibility applicable to a juvenile offender who committed murder, see note 5, supra -- art. 26 requires that, if the judge imposes a term of incarceration after finding a probation violation, the juvenile be treated for parole eligibility purposes no more harshly than a juvenile offender who committed murder.[21]  See Perez I, 477 Mass. at 685.

---

[19] Thus, in Graham, 560 U.S. at 57, 82, the Supreme Court concluded that a sentence of life without the possibility of parole for the juvenile offender's convictions of nonhomicide offenses, which was imposed following a determination that the juvenile offender had committed a breach of a condition of probation, violated the Eighth Amendment.

[20] The sentence must comply with the traditional tripartite test for proportional punishments.  See note 12, supra.

[21] The Commonwealth has not shown extraordinary circumstances requiring treating the juvenile more harshly for parole eligibility purposes.  See Perez II, 480 Mass. at 571; Perez I, 477 Mass. at 685.

Specifically, a juvenile offender who commits murder, receives parole after a period of parole ineligibility, and violates the conditions of parole is at risk of parole revocation. If parole is revoked, the juvenile offender is returned to incarceration, with periodic reviews for determinations of parole at each set-back[22] period. See 120 Code Mass. Regs. § 303.24(1)(f)(2) (2017) (if parole board denies reparole after parole revocation hearing, "the case shall be placed back on the docket for a regularly scheduled review hearing, pursuant to 120 [Code Mass. Regs. §] 301.01"); 120 Code Mass. Regs. § 301.01(5) (2017) ("In cases involving inmates serving life sentences with parole eligibility, a parole review hearing occurs five years after the initial parole release hearing, except where the Parole Board members act to cause a review at an earlier time"). Similarly, here, if the judge finds that the juvenile has violated the conditions of probation and determines to revoke probation, the judge may resentence the juvenile on the remaining nonhomicide offenses subject to

---

[22] "We refer to the period between the parole board's denial of parole and a prisoner's subsequent review as a 'setback' or 'set-back period.'" Roberio v. Massachusetts Parole Bd., 483 Mass. 429, 432 (2019). See G. L. c. 127, § 133A ("If [parole] is not granted, the parole board shall, at least once in each ensuing five year period, consider carefully and thoroughly the merits of each such case on the question of releasing such prisoner on parole").

periodic parole review on the same or a shorter timetable than that applicable to a juvenile who committed murder, who was paroled, and whose parole was revoked.

3. <u>Conclusion</u>.  We affirm the order denying the juvenile's second motion for relief from unlawful restraint.

<u>So ordered</u>.